1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

8

9

10

11

12

13

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>         vs.<br><br>DAVID EBENAL; and ROCKPORT HOLDINGS, LLC,<br>                              Defendants. | Cause No.<br><br>**COMPLAINT** |

14        Plaintiff Arch Specialty Insurance Company ("Arch") states and pleads as follows:

15                              **I. PARTIES**

16        1.1     Arch is a Missouri corporation with its principal place of business in New

17 Jersey.

18        1.2.    On information and belief, Defendant David Ebenal is a citizen of Washington

19 State.

20        1.3     On information and belief, Defendant Rockport Holdings, LLC is a Washington

21 State limited liability company whose members are citizens of Washington State. Rockport

22 Holdings, LLC was at all relevant times engaged in commercial activity in Washington State.

23                      **II. JURISDICTION AND VENUE**

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington 98101
(206) 624-1800/Fax (206) 624-3585

2.1     This action is between citizens of different states.

2.2     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as set forth more particularly below.

2.3     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

2.4     An actual justiciable controversy exists between Arch and Defendants within the meaning of 28 U.S.C. § 2201, *et seq.* regarding the scope and extent of insurance coverage provided under the Arch policies, as set forth more particularly below.

2.5     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial portion of the events giving rise to the insurance claim occurred in this District.

2.6     In accordance with LCR 3(e) this case should be assigned to the Seattle Division.

### III. GENERAL ALLEGATIONS

3.1     Arch issued the following insurance policies ("Policies"):

| Policy No. | Period | Named Insureds |
|---|---|---|
| 72DPC1446800 | 11/10/03 - 4/1/04 | Ebenal General Contractors, Inc.; Ebenal General, Inc.; Ebenal General Special Projects, Inc.; Meridian-Pacific Highway, Inc.; Bonita & David Ebenal |
| 72DPC1446801 | 4/1/04 - 4/1/05 | Ebenal General Contractors, Inc.; Ebenal General, Inc.; Ebenal General Special Projects, Inc.; Meridian-Pacific Highway, LLC; Bonita & David Ebenal |
| DPC000559100 | 4/1/05 - 4/1/06 | Ebenal General Contractors, Inc.; Ebenal General Special Projects, Inc.; Meridian-Pacific Highway, LLC |
| DPC000559101 | 4/1/06 - 4/1/07 | Ebenal General Contractors, Inc.; Ebenal General Special Projects, Inc.; Meridian Pacific Highway, LLC; Rockport Holdings, LLC |
| DPC000559102 | 4/1/07 - 8/27/07 | Ebenal General Contractors, Inc.; Ebenal General Special Projects, Inc. |

Certified copies of the Policies are **Exhibits 1 to 5** hereto (with redactions).

3.2     Defendants were sued in the underlying lawsuit of *Terra Firma Bellingham,*

COMPLAINT – 2
USDC WD WA/SEA CAUSE NO.

1    *LLC v. David Ebenal, et al.*, Whatcom County Superior Court No. 18-2-01808-37 ("Underlying

2    Lawsuit"). A copy of the Complaint in the Underlying Lawsuit is **Exhibit 6** hereto.

3        3.3     In the Underlying Lawsuit, the plaintiff alleges damages of $215,921 as well as

4    additional unspecified amounts, as set forth in **Exhibit 6**.

5        3.4     Defendants tendered defense and indemnity of the Underlying Lawsuit,

6    inclusive of pre-tender fees, to Arch under the Policies. Arch agreed to defend under a

7    reservation of rights.

8                            **IV. CLAIM FOR DECLARATORY RELIEF**

9        4.1     Arch incorporates by reference the allegations of all paragraphs above as if fully

10   alleged herein.

11       4.2     In accordance with 28 U.S.C. §2201, Arch seeks a ruling from this Court that

12   the Policies do not provide coverage for the Underlying Lawsuit.

13       4.3     An actual justiciable controversy exists between Arch and Defendants

14   concerning whether there is insurance coverage under the Policies for the claims asserted in the

15   Underlying Lawsuit.

16       4.4     The Policies do not provide coverage for the claims or defense costs in the

17   Underlying Lawsuit under the policy language including, but not limited to, the following

18   potentially applicable policy provisions or legal grounds:

19               (a)     Defendants are not insureds under one or more of the Policies;

20               (b)     There are no damages because of property damage caused by an

21   occurrence during the policy period(s).

22               (c)     There is no coverage for property damage known to have occurred, in

23   whole or in part, prior to the policy period, and any continuation, change or resumption of such

COMPLAINT – 3
USDC WD WA/SEA CAUSE NO.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

1    property damage during or after the policy period.

2                   (d)    The exclusion for property damage expected or intended from the

3    standpoint of the insured precludes coverage in whole or in part.

4                   (e)    The exclusion for contractual liability precludes coverage in whole or in

5    part.

6                   (f)    The exclusion for property you own, rent or occupy precludes coverage

7    in whole or in part.

8                   (g)    The exclusions for that particular part of real property on which you are

9    performing operations and for that particular part of property that must be restored, repaired or

10   replaced because your work was incorrectly performed on it preclude coverage in whole or in

11   part.

12                  (h)    The exclusion for impaired property precludes coverage in whole or in

13   part.

14                  (i)    The exclusion for pollution precludes coverage in whole or in part.

15                  (j)    The exclusion for earth movement precludes coverage in whole or in

16   part.

17                  (k)    The Insureds have breached one or more policy conditions, including the

18   notice condition or the assumption of legal obligations condition.

19                  (l)    Arch has been prejudiced by the aforesaid breaches of policy conditions.

20                  (m)    The Policies do not provide coverage to the extent that the alleged

21   damages are not the result of fortuitous events or are a known loss.

22                  (n)    Under other such further policy language or other grounds that may

23   restrict or preclude coverage under the Policies or under law.

COMPLAINT – 4
USDC WD WA/SEA CAUSE NO.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

# V. RESERVATION OF RIGHT TO AMEND

5.1    Arch reserves the right to amend its complaint, in whole or in part, as it obtains additional facts through investigation and discovery.

## VI. PRAYER FOR RELIEF

6.1    Wherefore, Arch prays for judgment as follows:

(a)    That the Court render declaratory judgment in favor of Arch;

(b)    That the Court declare the rights, duties, obligations, status and other legal relations of the parties, including a declaration that there is no insurance coverage under the Policies, that Arch has no duty to defend or indemnify for the claims in the Underlying Lawsuit, that Arch may withdraw from the defense of the Underlying Lawsuit, that Defendants have breached policy conditions and that Defendants are not entitled to pre-tender fees because their breach of policy conditions is prejudicial;

(c)    For all of Arch's costs and disbursements incurred herein; and

(d)    For such other relief as the Court may deem just and proper.

DATED this 17 day of September, 2021.


SOHA & LANG, P.S.

By: *s/ Geoffrey Bedell*
By: *s/ Cristin Cavanaugh*
   Geoffrey Bedell, WSBA # 28837
   Email: bedell@sohalang.com
   Cristin Cavanaugh, WSBA # 53251
   Email: cavanaugh@sohalang.com
   **Soha & Lang, P.S.**
   1325 Fourth Avenue, Suite 2000
   Seattle, WA  98101-2570
   Telephone:  206-624-1800
   Facsimile:   206-624-3585
   Attorneys for Plaintiff

COMPLAINT – 5
USDC WD WA/SEA CAUSE NO.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

# Exhibit 1

## **DECLARATION**

I declare under penalty of perjury under the law of California that the following is true and correct.

Annexed hereto as Exhibit A is a true and accurate copy of Arch Specialty Insurance Company policy number 72DPC1446800 issued to Ebenal General Contractors, Inc., 4326 Pacific Highway Bellingham, Washington 98226 in effect from November 10, 2003 to November 10, 2004 including any and all applicable endorsements and forms made a part thereof.

Executed on the 1st day of September, 2021, at Corte Madera, CA.

Sean Basco
Regional Vice President, E&S Casualty

# Exhibit A



# ☆Arch
## Insurance Group

EC 89 26 2885

## ARCH SPECIALTY INSURANCE COMPANY
### A Wisconsin Corporation

Home Office Address:
300 First Stamford Place, 5th Floor
Stamford, CT 06902

Administrative Office Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
(800) 817-3252

## COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS

POLICY NUMBER: 72DPC1446800                    RENEWAL OF:  NEW

EFFECTIVE DATE:   11/10/03                     AGENT CODE:
EXPIRATION DATE:  11/10/04
**12:01 AM STD Time at the Address of the Named Insured**

**Item 1.   Named Insured and Producing Agent**
Named Insured:     EBENAL GENERAL CONTRACTORS, INC.

Mailing Address:     4326 PACIFIC HIGHWAY
                     BELLINGHAM, WASHINGTON 98226

Producing Agent:    CRC INSURANCE SERVICES, INC.

Mailing Address:     1420 FIFTH AVENUE, SUITE 1610
                     SEATTLE, WASHINGTON  98101

Surplus Line Broker: CRC INSURANCE SERVICES, INC.

Mailing Address:     1420 FIFTH AVENUE, SUITE 1610
                     SEATTLE, WASHINGTON  98101

Surplus Lines License #: 98358

**Item 2. Named Insured Classified as:**

☐ Individual                ☐ Partnership            ☒ Corporation
☐ Joint Venture             ☐ LLC                    ☐ LLP

**Item 3.   Limits of Insurance**
BODILY INJURY AND PROPERTY DAMAGE LIABILITY – EACH OCCURRENCE         $ 1,000,000
PERSONAL AND ADVERTISING INJURY LIMIT – EACH OFFENSE                  $ 1,000,000
MEDICAL EXPENSE LIMIT – ANY ONE PERSON                               $ N/A
GENERAL AGGREGATE LIMIT (Other Than Products – Completed Operations)  $ 2,000,000
PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT                         $ 2,000,000
DAMAGES TO PREMISES RENTED TO YOU LIMIT – EACH OCCURRENCE             $ 50,000

**Item 4. Policy Premium: $**

Deposit Premium $▮▮▮  which is:     ☐ A Flat Charge Per Each Policy Period.

☒ Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

Minimum Retained Audit Premium $▮▮▮
Minimum Retained Premium 35%, not subject to adjustment in the event of cancellation by you.

06 CGLD0047 00 06 03                                                   Page 1 of 2



SC 89.26.2005

Item 5. Forms and Endorsements attached: See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03

In consideration of the payment of premium and in reliance upon statements made in the application this policy including all endorsements issued herein shall constitute the contract between the Company and the Named Insured.

Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

06 CGLD0047 00 06 03

## SCHEDULE OF FORMS AND ENDORSEMENTS

SC 29.25.2005

| NAMED INSURED: EBENAL GENERAL CONTRACTORS, INC. | TERM: 11/10/2003 to 11/10/2004 |
|---|---|
| POLICY NUMBER: 72DPC1446800 | |

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 CGLD0047 00 06 03 | COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 06 CGL0098 00 07 03 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | 06 ML0002 00 07 03 | SIGNATURE PAGE |
| | 02 ML 0003 00 08 02 | SERVICE OF SUIT |
| 1 | 02 CGL0108 00 09 03 | BLANKET ADDITIONAL INSURED - DEDUCTIBLE POLICY VERSION |
| 2 | 00 CGL0121 00 01 04 | WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY |
| 3 | 02 CGL0007 00 10 02 | CROSS SUITS EXCLUSION |
| 4 | 02 CGL 0004 00 10 02 | AIRCRAFT PRODUCTS/GROUNDING EXCLUSION |
| 5 | 02 CGL0018 00 10 02 | INTELLECTUAL PROPERTY EXCLUSION |
| 6 | 00 CGL0101 00 07 03 | MEDICAL PAYMENTS EXCLUSION |
| 7 | 00 CGL0080 00 04 03 | RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION |
| 8 | 02 CGL0011 00 10 02 | EARTH MOVEMENT OR SUBSIDENCE EXCLUSION |
| 9 | 00 CGL0041 00 12 02 | WRAP-UP EXCLUSION |
| 10 | 00 CGL0039 00 12 02 | ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION |
| 11 | 00 CGL0105 00 09 03 | CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS EXCLUSION |
| 12 | 02 CGL0016 00 10 02 | EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION |
| 13 | 00 CGL0125 00 01 04 | SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY |
| 14 | 00 CGL0038 00 12 02 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| 15 | 02 CGL0107 00 09 03 | PREMIUM COMPUTATION ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 16 | 00 CGL0099 00 10 03 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| 17 | 02 GCL0109 00 09 03 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT – DEDUCTIBLE POLICY VERSION |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |



## ☆Arch
### Insurance Group

SC.09.26.2005

| | |
|---|---|
| **ARCH SPECIALTY INSURANCE COMPANY**<br>**300 First Stamford Place, 5th Floor**<br>**Stamford, CT 06902** | **COMMERCIAL GENERAL LIABILITY**<br><br>**06 CGL0098 00 07 03** |

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V–DEFINITIONS.**

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance;** and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

2. **Exclusions**

    This insurance does not apply to:

    a. **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

## c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

## d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law(s).

## e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

 (a) Employment by the insured; or

 (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of **Paragraph (1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages .26 .2005 with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

 (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

  (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

  (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

 (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

 (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or

any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat,

smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in **Paragraph f.(2) or f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes but is not limited to; civil war, insurrection, usurped power, rebellion or revolution.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

**Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

**Paragraphs (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**Paragraph (6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of "your product" or any part of "your product".

**l. Damage To Your Work**

"Property damage" to "your work" arising out of "your work" or any part of "your work" and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusions **j.** through **m.** do not apply to damage by fire to premises while rented to

you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III – LIMITS OF INSURANCE**.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Asbestos**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**q. Nuclear Liability**

"Bodily injury" or "property damage"

(1) with respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be

an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization; or

(4) under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(a) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(c) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" includes radioactive, toxic or explosive properties.

(2) Nuclear material" means "source material", "Special nuclear material" or "by-product material".

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

(5) "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel", or (iii) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations

conducted on such site and all premises used for such operations.

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(8) "Property damage" includes all forms of radioactive contamination of property.

r. **Employment Related Practices**

Any "bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, act or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c) or (d)** above is directed.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

s. **Prior Loss**

Any "bodily injury" or "property damage ", if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy.

t. **Fungi, Mold and Mildew**

"Bodily injury" or "Property damage" arising out of fungi, including but not

limited to, mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

#### u. Lead

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance** ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

SC.09:26.2005

This insurance does not apply to:

#### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

#### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

#### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

#### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

#### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

#### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract.

#### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

#### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to **Paragraphs 14.a., b.** and **c.** of "personal and advertising injury" under **Section V – Definitions.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Fungi, Mold and Mildew**

"Personal and advertising injury" arising out of fungi, including but not limited to,

mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**o. Employment-Related Practices**

"Personal and Advertising Injury" arising out of employment-related practices to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ;

    **(b)** Termination of a person's employment; or

    **(c)** Employment-related practices, policies, act or omissions, including but not limited to, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **(d)** Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

**(2)** any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c)** or **(d)** above is directed.

This exclusion applies:

**(1)** Whether or not the insured may be held liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

**p. Asbestos**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or

threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

### q. Lead

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

SC 89.26.2005

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while taking part in athletics.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under **Coverage A**.

### h. War

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

### i. Clubs

If you are a club, to any of your members.

### j. Medical Expenses

Arising from or in connection with any medical expenses for services by you, any of your employees or any person or organization under a contract to you to provide such services.

### k. Fungi, Mold and Mildew

Arising out of fungi, including but not limited to, mold or mildew, and any microtoxins, spores, scents, vapors,

     Includes Copyright Material from Insurance Services Office With its Permission.

gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**l. Lead**

Arising out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

**m. Asbestos**

Which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**n. Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under **Coverage C**;

   b. Damages under **Coverage A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under **Coverage B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **Coverage A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **Paragraph 2.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **Paragraphs 2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under **Coverage A**; and

   b. Medical expenses under **Coverage C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **Paragraph 5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to

you or temporarily occupied by you with permission of the owner.

7. Subject to **Paragraph 5.** above, the Medical Expense Limit is the most we will pay under **Coverage C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance apply to the policy period set forth in the Declarations or any endorsements thereto.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or an offense is not notice of a claim.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

This insurance is excess over any other valid and collectible insurance that applies to any claim or "suit' to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance.

### 5. Premium Audit

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will

compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 10. Cancellation

**a.** The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy contains all agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Inspection**

We shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the insured's property or operations, at any time. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the insured or others, or determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

**13. Named Insureds**

**a.** The First Named Insured is authorized to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

**b.** Each Named Insured is jointly and severally liable for:

**(1)** All premiums due under this policy; and

**(2)** All obligations that arise due to the self-insured retention including claim expenses

**(3)** Any other financial obligations of the Named Insured to us arising out of any agreements contained in this policy.

**14. Transfer of Your Rights and Duties under this policy**

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death to an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **Paragraph a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **Paragraph a.** above;

      (2) The activities of a person whose home is in the territory described in **Paragraph a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **Paragraph a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A written sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. A written elevator maintenance agreement;

   f. That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

   **Paragraph f.** does not include that part of any written contract or written agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change

orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **Paragraph (2)** above or supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **Paragraphs a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **Paragraphs a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

All "personal and advertising injury" arising out of the same or similar material, regardless of the mode in which such material is communicated, including but not limited to publication by means of Internet, extra-net, email or website, will be considered as arising solely out of one offense.

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard" means:

**a.** All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another

contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** This does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.



SC #9.26.2005

Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE
COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to
be executed and attested, and, if required by state law, this policy shall not be valid
unless countersigned by a duly authorized representative of the company.

Ralph E. Jones III

President

Martin J. Nilsen

Secretary

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC 499.26.2885

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 ML 0003 00 08 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 09.26.2005

**BLANKET ADDITIONAL INSURED – DEDUCTIBLE POLICY VERSION**

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization as an insured where required by contract but only with respect to liability arising out of your operations or premises owned by or rented to you, or your work.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 1

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0108 00 09 03                                                                                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

**Name of Person or Organization:**     Where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your operations or your work done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0121 00 01 04       Includes Copyright Material from Insurance Services Office
With its Permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 09.26.2003

## CROSS SUITS EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of: damages of one insured against another insured.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0007 00 10 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC. 05.26.2005

## AIRCRAFT PRODUCTS/GROUNDING EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:  the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

1. "Aircraft product" means:

    **a.** Aircraft (including missiles or spacecraft, and any ground support or control equipment used therewith);

    **b.** Any article furnished by the insured or on behalf of any insured, and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment;

    **c.** Any insured's products used at an airport for the purpose of guidance, navigation or direction of aircraft; and

    **d.** Training aids, instructions, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

2. "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by any insured or on behalf of any insured, or manufactured, assembled or processed by any other person or organization:

    **a.** According to the specifications, plans, suggestions, orders, or drawings provided by any insured or on behalf of any insured; or

    **b.** With tools, machinery or other equipment furnished to such persons or organizations by any insured or on behalf of any insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:4

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL 0004 00 10 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 09.26.2005

## INTELLECTUAL PROPERTY EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

any "bodily injury", "property damage", or "personal and advertising injury" arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1. copyright, other than infringement of copyrighted advertising materials;
2. patent;
3. trade secrets;
4. trade dress; or
5. trade mark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:5

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0018 00 10 02



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY** 09-26-2005

**MEDICAL PAYMENTS EXCLUSION**

It is hereby agreed that Section I, Coverages, is amended to delete Coverage C Medical Payments.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:6

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

## THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY. 09.26.2005

### RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

the construction or existence of a non-commercial dwelling or residence or the sale or conversion by you in whole or in part of a building to a non-commercial dwelling or residence at any time after the inception date of this insurance policy.  Examples of non-commercial dwellings or residences, which are not to be construed as all inclusive examples, are homes, cooperatives, town homes, lofts and condominiums.

However, this exclusion does not apply to the construction, management or ownership of apartment buildings, hotels or motels by you.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:7

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0080 00 04 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY** 09-26-2005

### EARTH MOVEMENT OR SUBSIDENCE EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting or any other similar movement of earth or mud, regardless of whether such movement is a naturally occurring phenomena or is man-made.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 8

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0011 00 10 02                                                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WRAP-UP EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

wrap-ups, owner controlled insurance program, contractor controlled insurance programs, or similar rating program.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:9

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0041 00 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENGINEERS, ARCHITECTS OR
SURVEYORS PROFESSIONAL LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.  Supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:10

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0039 00 12 02          Includes Copyright Material from Insurance Services Office
With its Permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0105 00 09 03                                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

1.  "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly, in whole or in part, by the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system; or

2.  Any moisture-related or dry rot related "property damage" to a house or other building to which an "exterior insulation and finish system" has been applied, if that "property damage" is caused directly or indirectly, in whole or in part, by the "exterior insulation and finish system";

Regardless of any other cause or event that contributed concurrently or in any sequence to that injury or damage.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

    a)  A rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and
    b)  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and
    c)  A reinforcing mesh that is embedded in a base coat applied to the insulation board; and
    d)  A finish coat providing surface texture and color.

However, an "exterior insulation and finish system" does not include a cement-based, enhanced stucco cladding system which:

    a)  Incorporates a weather resistive building wrap; or
    b)  Incorporates ribbed insulation board to provide drainage; or
    c)  Is sold under the brand name "Kwik Kote©";

So long as that cement-based, enhanced stucco cladding system satisfies all requirements of the applicable model building code and the applicable local building code.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 12

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0016 00 10 02                                                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY**

The Conditions of this policy are amended to include the following:

1.  Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than those limits provided by this policy, will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2.  The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working for any claim or "suit" for "bodily injury", "property damage", and "personal injury and advertising injury" arising out of the work performed by the "subcontractor."

3.  The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4.  For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any one of the above conditions, are not satisfied, a deductible of $100,000 per "occurrence": or offense will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and "personal injury and advertising injury" arising out of the work performed by the "subcontractor" for the insured.

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an Insured and does work or performs services for or on behalf of the Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 13

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0125 00 01 04                                                                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 86 26 2005

## EMPLOYEE BENEFITS LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $10,000 | each employee | ▮▮▮▮ |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | 11/10/2003 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  The following is added to Section I - Coverages:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result.

    But:

    (1)  The amount we will pay for damages is limited as described in Paragraph E. (Section IV - Limits Of Insurance); and

    (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b.  This insurance applies to damages only if:

    (1)  The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

00 CGL0038 00 12 02          Includes Copyright Material from Insurance Services Office          Page 1 of 8
                                          With its Permission.

(2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

(3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

12. Exclusions

This insurance does not apply to:

a. Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c. Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d. Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

00 CGL0038 00 12 02          Includes Copyright Material from Insurance Services Office          Page 2 of 8
                                              With its Permission.

f. Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. Employment-Related Practices

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II - Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

C. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II - Who Is An Insured does not apply.

D. For the purposes of the coverage provided by this endorsement, Section IV - Limits Of Insurance is replaced by the following:

Includes Copyright Material from Insurance Services Office With its Permission.

1. Limits Of Insurance

   a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;
      (2) "Claims" made or "suits" brought;
      (3) Persons or organizations making "claims" or bringing "suits";
      (4) Acts, errors or omissions; or
      (5) Benefits included in your "employee benefit program".

   b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" or your "employee benefit program".

   c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      (1) An act, error or omission; or
      (2) A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

   The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional

   period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. Deductible

   a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   c. The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

      (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim" apply irrespective of the application of the deductible amount.

   d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E.  For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section VI- Commercial General Conditions are replaced by the following:

2.  Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"

   a.  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      (1) What the act, error or omission was and when it occurred; and

      (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   b.  If a "claim" is made or "suit' is brought against any insured, you must:

      (1)  Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2)  Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c.  You and any other involved insured must:

      (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2)  Authorize us to obtain records and other information;

      (3)  Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4.  Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   a.  Primary Insurance

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b.  Excess Insurance
      (1)  This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis: that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:
         (a)  No Retroactive Date is shown in the Schedule of this insurance; or
         (b)  The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

F.  For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

EXTENDED REPORTING PERIOD

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

a.  This endorsement is canceled or not renewed; or

b.  We renew or replace this endorsement with insurance that:

(1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

(2) Does not apply to an act, error or omission on a claims-made basis.

2.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3.  An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a.  The "employee benefit programs" insured;

b.  Previous types and amounts of insurance;

    c.  Limits of insurance available under this endorsement for future payment of damages; and    $\text{SC-BB.26.2885}$

    d.  Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4.  If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period. The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph E.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph E.1.c.

G.  For the purposes of the coverage provided by this endorsement, the following definitions are added to the Section VI-Definitions:

1.  "Administration" means:

    a.  Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b.  Handling records in connection with the "employee benefit program"; or

    c.  Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

2.  "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3.  "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4.  "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a.  Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    b.  Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    c.  Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    d.   Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e.   Any other similar benefits designated in the Schedule or added thereto by endorsement.

I.   For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

    5   "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

    18.  "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

        a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

        b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Endorsement Number:14

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

With its Permission.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY 09.26.2005

## PREMIUM COMPUTATION ENDORSEMENT -- DEDUCTIBLE POLICY VERSION

1. The Deposit Premium set forth in of the Declarations is adjustable, and is only an estimated premium for the Audit Period shown below.

The final earned premium for the Audit Period shall be determined as specified in Item **5. Premium Audit** of **SECTION IV -- Commercial General Liability Conditions**.  The Audit Premium shall be computed by applying the Rate of  $ ▮   per each $ ▮   of the Premium  Base identified in 2. below.  Such Rate is net of any taxes, licenses, or fees.  The final premium calculation is subject to the Minimum Retained Premium as stated in the Declarations.

2. The Premium Base shall be identified in (A) and (B) below:

    (A)  PREMIUM BASE

         ☒  gross "sales" excluding "aircraft products"

             ☐  "intercompany sales" and

             ☐  "foreign sales".

        ☐ "Payroll" as determined immediately below:

             ☐  Gross Unmodified "Payroll"

             ☐  Workers Compensation Payroll"

             ☐  Workers Compensation Payroll" excluding:

                  (1)  "Clerical Office Employees"
                  (2)  "Salesmen, Collectors, Messengers"
                  (3)  Drivers and their helpers if principal duties are to work on or in connection with "autos"

      ☐  Other (Describe)  _____

      Estimated Exposures  $ ▮

    (B)  SPECIFIC DELETIONS FROM PREMIUM BASE, IF ANY:

        ☐  Designated Products described in the following endorsements:

        ☐  Designated Operations described in the following endorsements:

        ☐  Other, described in the following endorsements

02 CGL0107 00 09 03

3. The Audit Period is:

SC 09.26.2005

☒ Annual

☐ Semi-Annual

☐ Monthly

☐ Other

4. The Audit Period is measured from the Effective Date of the Insurance Policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 15

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0107 00 09 03                                                                      Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY** 09.26.2005

## DEDUCTIBLE LIABILITY ENDORSEMENT

### Schedule

1.  Specific coverages to which a deductible(s) applies and amount of deductible(s):

    | Coverage | Amount of Deductible |
    |---|---|
    | ☒ All coverages..............................................................$ 10,000 | |
    | ☐ Products/Completed Operations...............................................$ _____ | |
    | ☐ All coverages other than Products/Completed Application................$ _____ | |

2.  The deductible applies to:

    ☒ Indemnity and Expenses
    ☐ Indemnity Only

3.  A deductible aggregate applies as follows:

    ☐ The deductible aggregate amount for all coverages, which is the maximum amount of deductible payments for which the insured is responsible, is: $ _____.  The deductible aggregate is subject to adjustment upwards based on a rate of $ _____ per 1000 _____.  Once the loss payments actually paid by us, and reimbursed by the insured to us, equals the deductible aggregate amount, the insured's deductible will be reduced to $ _____.  The estimated exposure base, at inception, is $ _____.

    (If no aggregate is shown, then there is no aggregate on the cumulative amount of deductible payments for which the insured is responsible.)

Application of the Deductible Liability Endorsement

The deductible(s) set forth in the Schedule apply to indemnity and expenses, (or indemnity only if the appropriate box is checked in the Schedule), on a "per occurrence" basis.  The insured is responsible for payment of the deductible(s).

The insured is responsible for all payments within the deductible amount.  Subject to the Limits of Liability and all other terms and conditions for this policy, our obligation to pay damages and expenses on your behalf applies only to the amount of damages and expenses in excess of the deductible amounts set forth in the Schedule.  We may pay part or the entire deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

Our limits of liability are not increased by the presence of a deductible.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 16

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

00 CGL0099 00 10 03                                                                     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.** 09.26.2005

## DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT – DEDUCTIBLE POLICY VERSION

Designated Construction Projects: ANY CONSTRUCTION PROJECT AT WHICH YOU PERFORM OPERATIONS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Subject to paragraph F., below, for all sums which the insured becomes legally obligated to pay as damages, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above, damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence for "Bodily Injury and Property Damage Liability", Each Occurrence for "Damages To Premises Rented To You", and Each Offense for "Personal and Advertising Injury" continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit or the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. The provisions of **SECTION III – LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

F. Regardless of the Number of projects and any other circumstance, the amount we will pay under this insurance policy shall be no more than the "Policy Aggregate" shown below:

Policy Aggregate Limit                    $5,000,000

In the event that no dollar amount is shown next to the Policy Aggregate Limit above, the Policy Aggregate Limit is $10,000,000.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 17

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured:

Endorsement Effective Date:

02 CGL0109 00 09 03      Includes Copyright Material from Insurance Services Office With its Permission.            Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

#### SCHEDULE

| Limits Of Insurance | | |
|---|---|---|
| **Bodily Injury By Accident:** | $ 1,000,000. | **Each Accident** |
| **Bodily Injury By Disease:** | $ 1,000,000. | **Aggregate Limit** |
| **Bodily Injury By Disease:** | $ 1,000,000. | **Each Employee** |

If no entry appears with respect to any of the limits shown above, then the limit will be deemed to be $1,000,000

A. The following is added to Section I – Coverages:

### COVERAGE – STOP GAP – EMPLOYERS LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

(1) The:

(a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

(b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

(c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

(2) The:

(a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

(b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

(1) For:

(a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1)   Deprived of common law defenses; or

(2)   Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1)   Knowingly employed by you in violation of any law as to age; or

(2)   Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1)   The Federal Employer's Liability Act (45 USC Section 51-60);

(2)   The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3)   The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4)   The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5)   The Defense Base Act (42 USC Sections 1651-1654);

(6)   The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7)   The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8)   Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9)   Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The Supplementary Payments provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

C. For the purposes of this endorsement, Section II – Who Is An Insured, is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, Section III Limits Of Insurance, is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply to the policy period set forth in the Declarations or any endorsements thereto.

E. For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties The Event Of Injury, Claim Or Suit**

    a.   You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

        (1)  How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any injury.

    b.   If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.   You and any other involved insured must:

        (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

        (2)  Authorize us to obtain records and other information;

        (3)  Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

        (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

        (5)  Do nothing after an injury occurs that would interfere with our right to recover from others.

    d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.** For the purposes of this endorsement, Paragraph 4. of the Definitions Section is replaced by the following:

    4.   "Coverage territory" means:

    a.   The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.   International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c.   All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the Definitions Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 18

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446800

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

Endorsement Effective Date: 11/10/03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC-09:26:2005

In consideration of premium to be determined at audit, it is hereby agreed and understood that the policy is cancelled effective 4/1/04.

All other terms and conditions of this Policy remain unchanged.

Issued By: Arch Specialty Insurance Company

Endorsement Number: 19

Policy Number: 72DPC1446800

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

Endorsement Effective Date: 4/1/2004

*Ralph E. Jonas*

President

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The final premium audit has resulted in a return premium of $█████

All other terms and conditions of this Policy remain unchanged.

Issued By: Arch Specialty Insurance Company

Endorsement Number: 20

Policy Number: 72DPC1446800

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

Endorsement Effective Date: 4/1/2004

*Ralph E. Jones III*

President

00 ML0207 00 10 03                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

SC 09.26.2005

**NAMED INSURED ENDORSEMENT**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:

EBENAL GENERAL, INC.
EBENAL GENERAL SPECIAL PROJECTS, INC.
MERIDIAN-PACIFIC HIGHWAY, INC.
BONITA & DAVID EBENAL

All other terms and conditions of this policy remain unchanged.

Endorsement Number:21

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72 DPC 14468 00

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

Endorsement Effective Date: 11/10/03

00 CGL0072 00 03 03

Arch Insurance
Operations

MAY 1 1 2005

Mercy Ameru

Initial : _____

ARCH SPECIALTY INSURANCE COMPANY
ADMINISTRATIVE OFFICE
ONE LIBERTY PLAZA, 53RD FLOOR
NEW YORK NY 10006

## NOTICE OF CANCELLATION OF INSURANCE

SC 05.12.2005

Named Insured & Mailing Address:

EBENAL GENERAL CONTRACTORS, INC.
4326 PACIFIC HIGHWAY
BELLINGHAM WA 98226

Producer: CRCAL10A

CRC INSURANCE SERVICES, INC.
1 METROPLEX DRIVE, SUITE 400
BIRMINGHAM AL 35209

---

Policy No.:  72DPC1446800
Type of Policy:  GENERAL LIABILITY CLAIMS MADE
Date of Cancellation:  04/01/2004; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We are cancelling this policy.  Your insurance will cease on the Date of Cancellation shown above.

---

The reason for cancellation is  policy was cancelled and rewritten.

# Home Office Copy

Named Insured

EBENAL GENERAL CONTRACTORS, INC.
4326 PACIFIC HIGHWAY
BELLINGHAM WA 98226

Date Mailed:
10th day of May, 2005

AUTHORIZED REPRESENTATIVE

FORM# CC9697WA51995
ODEN 3.0.05.05a

Copy for Named Insured

WACC14NONE APP
05102005SNNN
Page 1 of 1

# Exhibit 2

## **DECLARATION**

I declare under penalty of perjury under the law of California that the following is true and correct.

Annexed hereto as Exhibit A is a true and accurate copy of Arch Specialty Insurance Company policy number 72DPC1446801 issued to Ebenal General Contractors, Inc., 4326 Pacific Highway Bellingham, Washington 98226 in effect from April 1, 2004 to April 1, 2005 including any and all applicable endorsements and forms made a part thereof.

Executed on the 1st day of September, 2021, at Corte Madera, CA.


Sean Basco
Regional Vice President, E&S Casualty

# Exhibit A



## ✵Arch
### Insurance Group

## ARCH SPECIALTY INSURANCE COMPANY
A Wisconsin Corporation

Home Office Address:
300 First Stamford Place, 5th Floor
Stamford, CT 06902

Administrative Office Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
(800) 817-3252

### COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS

POLICY NUMBER: 72DPC1446801                    RENEWAL OF:  72DPC1446800

EFFECTIVE DATE:   04/01/04                     AGENT CODE:
EXPIRATION DATE:  04/01/05
12:01 AM STD Time at the Address of the Named Insured

**Item 1.   Named Insured and Producing Agent**
Named Insured:       EBENAL GENERAL CONTRACTORS, INC.

Mailing Address:     4326 PACIFIC HIGHWAY
                     BELLINGHAM, WASHINGTON 98226

Producing Agent:     CRC INSURANCE SERVICES, INC.

Mailing Address:     1420 FIFTH AVENUE
                     SUITE 1610
                     SEATTLE, WASHINGTON 98101

Surplus Line Broker: LINDSAY BOSCH
                     CRC INSURANCE SERVICES, INC.
Mailing Address:     1420 FIFTH AVENUE
                     SUITE 1610
                     SEATTLE, WASHINGTON 98101

Surplus Lines License #: CRCINS*98358

**Item 2. Named Insured Classified as:**
☐ Individual          ☐ Partnership          ☒ Corporation
☐ Joint Venture       ☐ LLC                  ☐ LLP

**Item 3.   Limits of Insurance**
| | |
|---|---|
| BODILY INJURY AND PROPERTY DAMAGE LIABILITY – EACH OCCURRENCE | $ 1,000,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT – EACH OFFENSE | $ 1,000,000 |
| MEDICAL EXPENSE LIMIT – ANY ONE PERSON | $ N/A |
| GENERAL AGGREGATE LIMIT (Other Than Products – Completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU LIMIT – EACH OCCURRENCE | $ 50,000 |

**Item 4. Policy Premium: $**

Deposit Premium $ ▮▮▮ which is:     ☐ A Flat Charge Per Each Policy Period.

☒ Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

Minimum Retained Audit Premium $ ▮▮▮
Minimum Retained Premium 35%, not subject to adjustment in the event of cancellation by you.

06 CGLD0047 00 06 03                                          Page 1 of 2

SC '89.26.2005

Item 5. Forms and Endorsements attached: See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03

In consideration of the payment of premium and in reliance upon statements made in the application this policy including all endorsements issued herein shall constitute the contract between the Company and the Named Insured.

Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

06 CGLD0047 00 06 03

# SCHEDULE OF FORMS AND ENDORSEMENTS

**NAMED INSURED:** EBENAL GENERAL CONTRACTORS, INC.     **TERM:** 4/01/2004  to  4/01/2005
**POLICY NUMBER:** 72DPC1446801

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 CGLD0047 00 06 03 | COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 06 CGL0098 00 07 03 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | 06 ML0002 00 07 03 | SIGNATURE PAGE |
| | 02 ML 0003 00 08 02 | SERVICE OF SUIT |
| 1 | 02 CGL0108 00 09 03 | BLANKET ADDITIONAL INSURED - DEDUCTIBLE POLICY VERSION |
| 2 | 00 CGL0130 00 01 04 | OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT |
| 3 | 00 CGL0121 00 01 04 | WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY |
| 4 | 00 CGL0007 00 05 04 | CROSS SUITS EXCLUSION |
| 5 | 02 CGL0018 00 10 02 | INTELLECTUAL PROPERTY EXCLUSION |
| 6 | 00 CGL0101 00 07 03 | MEDICAL PAYMENTS EXCLUSION |
| 7 | 00 CGL0080 00 06 04 | RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION |
| 8 | 02 CGL0011 00 10 02 | EARTH MOVEMENT OR SUBSIDENCE EXCLUSION |
| 9 | 00 CGL0041 00 12 02 | WRAP-UP EXCLUSION |
| 10 | 00 CGL0039 00 12 02 | ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION |
| 11 | 00 CGL0016 00 03 04 | EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION |
| 12 | 00 CGL0141 00 03 04 | SILICA EXCLUSION |
| 13 | 00 CGL0125 00 01 04 | SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY |
| 14 | 02 CGL0109 00 09 03 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 15 | 00 CGL0038 00 02 04 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| 16 | 00 CGL0119 48 03 04 | STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON |
| 17 | 02 CGL0107 00 09 03 | PREMIUM COMPUTATION ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 18 | 00 CGL0099 00 10 03 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# ✳️ Arch
## Insurance Group

**ARCH SPECIALTY INSURANCE COMPANY**
**300 First Stamford Place, 5th Floor**
**Stamford, CT 06902**

**COMMERCIAL GENERAL LIABILITY**

**06 CGL0098 00 07 03**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V–DEFINITIONS.**

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance**; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law(s).

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **Paragraph (1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

      **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or

any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat,

smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in **Paragraph f.(2) or f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes but is not limited to; civil war, insurrection, usurped power, rebellion or revolution.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of "your product" or any part of "your product".

**l. Damage To Your Work**

"Property damage" to "your work" arising out of "your work" or any part of "your work" and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusions **j.** through **m.** do not apply to damage by fire to premises while rented to

you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III -- LIMITS OF INSURANCE**.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Asbestos**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**q. Nuclear Liability**

"Bodily injury" or "property damage"

(1) with respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be

an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) under any Medical Payments coverage, to expenses incurred with respect to the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization; or

(4) under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(a) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(c) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" includes radioactive, toxic or explosive properties.

(2) Nuclear material" means "source material", "Special nuclear material" or "by-product material".

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

(5) "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel", or (iii) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(8) "Property damage" includes all forms of radioactive contamination of property.

**r. Employment Related Practices**

Any "bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, act or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c) or (d)** above is directed.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Prior Loss**

Any "bodily injury" or "property damage ", if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy.

**t. Fungi, Mold and Mildew**

"Bodily injury" or "Property damage" arising out of fungi, including but not

limited to, mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**u. Lead**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance** ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

SC:09.26.2005

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to **Paragraphs 14.a., b.** and **c.** of "personal and advertising injury" under **Section V – Definitions.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Fungi, Mold and Mildew**

"Personal and advertising injury" arising out of fungi, including but not limited to,

mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**o. Employment-Related Practices**

"Personal and Advertising Injury" arising out of employment-related practices to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of a person's employment; or

(c) Employment-related practices, policies, act or omissions, including but not limited to, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c)** or **(d)** above is directed.

This exclusion applies:

(1) Whether or not the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

**p. Asbestos**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or

threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**q. Lead**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

SC·69,.26.2005

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under **Coverage** A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**i. Clubs**

If you are a club, to any of your members.

**j. Medical Expenses**

Arising from or in connection with any medical expenses for services by you, any of your employees or any person or organization under a contract to you to provide such services.

**k. Fungi, Mold and Mildew**

Arising out of fungi, including but not limited to, mold or mildew, and any microtoxins, spores, scents, vapors,

gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**l. Lead**

Arising out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

**m. Asbestos**

Which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**n. Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

  (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

  (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

  (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

  (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

  (a) Owned, occupied or used by,

  (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

  (1) With respect to liability arising out of the maintenance or use of that property; and

  (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under **Coverage C**;

   b. Damages under **Coverage A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under **Coverage B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **Coverage A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **Paragraph 2.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **Paragraphs 2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under **Coverage A**; and

   b. Medical expenses under **Coverage C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **Paragraph 5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to

you or temporarily occupied by you with permission of the owner.

7. Subject to **Paragraph 5.** above, the Medical Expense Limit is the most we will pay under **Coverage C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance apply to the policy period set forth in the Declarations or any endorsements thereto.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   Notice of an "occurrence" or an offense is not notice of a claim.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

This insurance is excess over any other valid and collectible insurance that applies to any claim or "suit" to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance.

### 5. Premium Audit

**a.** We will compute all premiums for this policy in accordance with our rules and rates.

**b.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 10. Cancellation

a. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 11. Changes

This policy contains all agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## 12. Inspection

We shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the insured's property or operations, at any time. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the insured or others, or determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

## 13. Named Insureds

a. The First Named Insured is authorized to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

b. Each Named Insured is jointly and severally liable for:

   (1) All premiums due under this policy; and

   (2) All obligations that arise due to the self-insured retention including claim expenses

   (3) Any other financial obligations of the Named Insured to us arising out of any agreements contained in this policy.

## 14. Transfer of Your Rights and Duties under this policy

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death to an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## SECTION V -- DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **Paragraph a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

     (1) Goods or products made or sold by you in the territory described in **Paragraph a.** above;

     (2) The activities of a person whose home is in the territory described in **Paragraph a.** above, but is away for a short time on your business; or

     (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **Paragraph a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A written sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. A written elevator maintenance agreement;

   f. That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

   **Paragraph f.** does not include that part of any written contract or written agreement:

     (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

     (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change

orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **Paragraph (2)** above or supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **Paragraphs a., b., c. or d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **Paragraphs a., b., c. or d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or



premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

All "personal and advertising injury" arising out of the same or similar material, regardless of the mode in which such material is communicated, including but not limited to publication by means of Internet, extra-net, email or website, will be considered as arising solely out of one offense.

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard" means:

**a.** All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another

contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** This does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.



## Arch
### Insurance Group

SC 09.26.2005

Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE
COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to
be executed and attested, and, if required by state law, this policy shall not be valid
unless countersigned by a duly authorized representative of the company.

Ralph E. Jones III

President

Martin J. Nilsen

Secretary

06 ML0002 00 07 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

SC 09.26.2005

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

02 ML 0003 00 08 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BLANKET ADDITIONAL INSURED – DEDUCTIBLE POLICY VERSION**

**SECTION II - WHO IS AN INSURED** is amended to include as an insured the person or organization as an insured where required by contract but only with respect to liability arising out of your operations or premises owned by or rented to you, or your work.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 1

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

02 CGL0108 00 09 03                                                      Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

SC :09.26.2005

**OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT**

It is hereby agreed that the following paragraph is added to Section IV, Commercial General Liability Conditions, Item 4:

Where the named insured is required by a written contract to provide insurance that is primary and non-contributory, and the written contract so requiring is executed by the named insured before any loss, this insurance will be primary, but only if and to the extent required by that written contract.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0130 00 01 04                                                              Page 1 of 1

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

**Name of Person or Organization:**    Where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV – COM-MERCIAL GENERAL LIABILITY CONDITIONS**) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your operations or your work done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0121 00 01 04    ·    Includes Copyright Material from Insurance Services Office
With its Permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS SUITS EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of: damages of one Named Insured against another Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0007 00 05 04                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** .69 . 26 . 2005

## INTELLECTUAL PROPERTY EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

any "bodily injury", "property damage", or "personal and advertising injury" arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1. copyright, other than infringement of copyrighted advertising materials;
2. patent;
3. trade secrets;
4. trade dress; or
5. trade mark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:5

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

02 CGL0018 00 10 02

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MEDICAL PAYMENTS EXCLUSION

It is hereby agreed that Section I, Coverages, is amended to delete Coverage C Medical Payments.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:6

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0101 00 07 03                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

    1.    the construction, in whole or in part, or existence of a non-commercial dwelling or residence; or,

    2.    the construction of any building, in whole or in part, which has been converted to a non-commercial dwelling or residence, at any time after the inception date of this insurance policy.

For purposes of this endorsement, non-commercial dwellings or residences shall include, but are not limited to, homes, cooperatives, town homes, lofts and condominiums.

However, this exclusion does not apply to the construction, management or ownership of apartment buildings, hotels or motels by you.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 7

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0080 00 06 04                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EARTH MOVEMENT OR SUBSIDENCE EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting or any other similar movement of earth or mud, regardless of whether such movement is a naturally occurring phenomena or is man-made.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 8

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

02 CGL0011 00 10 02                                                                Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC 09.26.2005

## WRAP-UP EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

wrap-ups, owner controlled insurance program, contractor controlled insurance programs, or similar rating program.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:9

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0041 00 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.** Sc.05.26.2005

## ENGINEERS, ARCHITECTS OR
## SURVEYORS PROFESSIONAL LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.  Supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:10

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0039 00 12 02      Includes Copyright Material from Insurance Services Office
With its Permission.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

1. "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly, in whole or in part, by the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system; or

2. Any moisture-related or dry rot related "property damage" to a house or other building to which an "exterior insulation and finish system" has been applied, if that "property damage" is caused directly or indirectly, in whole or in part, by the "exterior insulation and finish system";

Regardless of any other cause or event that contributed concurrently or in any sequence to that injury or damage.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

    a) A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials; and

    b) The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and

    c) A reinforcing mesh that is embedded in a base coat applied to the insulation board; and

    d) A finish coat providing surface texture and color.

However, an "exterior insulation and finish system" does not include a cement-based, polymer-enhanced stucco cladding system which:

    a) Incorporates a weather -resistive barrier pursuant to applicable building codes ; and

    b) Incorporates ribbed insulation sheathing with ribs aligned vertically to provide drainage; and

    c) The manufacturer of the stucco components has a valid ICBO Evaluation Services Listing in good standing; and

    d) There is no mixing of different manufacturer's products for the stucco system

So long as that cement-based, enhanced stucco cladding system satisfies all requirements of the applicable model building code and the applicable local building code.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0016 00 03 04                                         Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SILICA EXCLUSION

This policy does not apply to:

Any claim, "suit," demand or loss that alleges "bodily injury," "property damage," or "personal and advertising injury" (including but not limited to, compliance with any request, demand, order, or statutory or regulatory requirement or any other action authorized or required by law), including any costs, fees, expenses, penalties, judgments, fines, or sanctions arising therefrom, which arises out of, or relates to, in whole or in part, the "silica hazard" or would not have occurred, in whole or in part, but for the "silica hazard".

As used in this exclusion, "silica hazard" means:

    (1)    actual, alleged or threatened exposure to "silica" either directly or indirectly, or

    (2)    the actual or alleged failure to warn, advise or instruct related to "silica", or

    (3)    the actual or alleged failure to prevent exposure to "silica", or

    (4)    the actual or alleged presence of "silica" whether or not within a building or structure.

As used in this exclusion, "silica" means any substance, regardless of its form or state, containing silicon, including but not limited to silicon, silica, silicates and silicone.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0141 00 03 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC 09.26.2005

**SUBCONTRACTOR ENDORSEMENT:  DEDUCTIBLE POLICY**

The Conditions of this policy are amended to include the following:

1. Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than those limits provided by this policy, will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2. The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working for any claim or "suit" for "bodily injury", "property damage", and "personal injury and advertising injury" arising out of the work performed by the "subcontractor."

3. The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4. For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any one of the above conditions, are not satisfied, a deductible of $100,000 per "occurrence" or offense will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and "personal injury and advertising injury" arising out of the work performed by the "subcontractor" for the insured.

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an Insured and does work or performs services for or on behalf of the Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 13

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0125 00 01 04                                                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT – DEDUCTIBLE POLICY VERSION**

> Designated Construction Projects: ANY CONSTRUCTION PROJECT AT WHICH YOU PERFORM OPERATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Subject to paragraph F., below, for all sums which the insured becomes legally obligated to pay as damages, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above, damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence for "Bodily Injury and Property Damage Liability", Each Occurrence for "Damages To Premises Rented To You", and Each Offense for "Personal and Advertising Injury" continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit or the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. The provisions of **SECTION III – LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

F. Regardless of the Number of projects and any other circumstance, the amount we will pay under this insurance policy shall be no more than the "Policy Aggregate" shown below:

Policy Aggregate Limit                    $5,000,000

In the event that no dollar amount is shown next to the Policy Aggregate Limit above, the Policy Aggregate Limit is $10,000,000.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 14

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | Each Employee | $10,000 | Each Employee | ■■■■■■ |
| | $1,000,000 | Aggregate | | | |
| Retroactive Date: | 11/10/2003 | | | | |

If no entry appears above with respect to the Aggregate, then the Aggregate limit will be $1,000,000.

If no entry appears above with respect to the Retroactive Date, then the Retroactive Date will be the Policy Period inception date.

A.  The following is added to Section I - Coverages:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission by the insured, or of any person for whom the insured is legally liable, in the "administration" of the insureds "employee benefit program", to which this insurance applies.

    But:

    (1) The amount we will pay for damages is limited as described in Paragraph D. of this endorsement; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b.  This insurance applies to damages only if:

    (1) The negligent act, error or omission did not take place before the Retroactive date, if any, shown in the Schedule, nor after the end of the policy period; and

    (2) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph F. of this endorsement.

c.  A "claim" seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

A "claim" received and recorded by the insured within sixty (60) days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.  Exclusions

This insurance does not apply to:

a.  Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.  Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c.  Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d.  Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.  Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with any workers' compensation, unemployment compensation insurance, social security or disability benefits laws or any similar laws.

g.  ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.  Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.  Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j.  Employment-Related Practices

Damages arising out of employment-related practices to:

(1) A person arising out of any:

    (a) Refusal to employ;

    (b) Termination of a persons employment; or

    (c) Employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in paragraphs (a), (b), (c), or (d) above is directed.

This exclusion applies:

(1) Whether or not the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

B.  For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II - Who Is An Insured are replaced by the following:

2.  Each of the following is also an insured:

a.  Each of your "employees" who is or was authorized to administer your "employee benefit program".

b.  Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until ninety (90) days after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

C. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II - Who Is An Insured does not apply.

D. For the purposes of the coverage provided by this endorsement, Section IV - Limits Of Insurance is replaced by the following:

1. Limits Of Insurance

   a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought;

      (3) Persons or organizations making "claims" or bringing "suits";

      (4) Acts, errors or omissions; or

      (5) Benefits included in your "employee benefit program".

   b. The Aggregate Limit is the most we will pay for all damages to which this insurance applies.

   c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      (1) A negligent act, error or omission; or

      (2) A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

   The limits of the coverage provided by this endorsement apply to the policy period set forth in the Declarations or any endorsements thereto.

2. Deductible

   a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   c. The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV-Commercial General Conditions are replaced by the following:

2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit' is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c. Method Of Sharing

Except with respect to the insurance described in item b.(1) above, if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

F. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

EXTENDED REPORTING PERIOD

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

a. This endorsement is canceled or not renewed; or

b. We renew or replace this endorsement with insurance that:

(1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

(2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first

committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3.  An Extended Reporting Period of five (5) years is available, but only by an endorsement and for an extra charge.

    You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    a.  The "employee benefit programs" insured;

    b.  Previous types and amounts of insurance;

    c.  Limits of insurance available under this endorsement for future payment of damages; and

    d.  Other related factors.

    The additional premium will not exceed 100% of the annual premium for this endorsement.

    The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4.  If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period. The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

    Paragraph D.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph D.1.c.

G.  For the purposes of the coverage provided by this endorsement only, the following definitions are added to the Section VI-Definitions:

1.  "Administration" means:

    a.  Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b.  Handling records in connection with the "employee benefit program"; or

    c.  Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

    However, "administration" does not include handling payroll deductions.

2.  "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3.  "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5   "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 15

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Limits Of Insurance | | |
|---|---|---|
| Bodily Injury By Accident: | $ 1,000,000 | Each Accident |
| Bodily Injury By Disease: | $ 1,000,000 | Aggregate Limit |
| Bodily Injury By Disease: | $ 1,000,000 | Each Employee |
| | | |
| If no entry appears with respect to any of the limits shown above, then the limit will be deemed to be $1,000,000 | | |

A. The following is added to Section I – Coverages:

**COVERAGE – STOP GAP – EMPLOYERS LIABILITY**

   **1. Insuring Agreement**

     a.  We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

       (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

       (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

     b.  This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

       (1) The:

         (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

         (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

         (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

       (2) The:

(a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

(b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

(1) For:

(a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1) Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The Supplementary Payments provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

C. For the purposes of this endorsement, Section II – Who Is An Insured, is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, Section III Limits Of Insurance, is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply to the policy period set forth in the Declarations or any endorsements thereto.

E. For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties The Event Of Injury, Claim Or Suit**

SC.09.26.2005

   a.  You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury.

   b.  If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c.  You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

      (5) Do nothing after an injury occurs that would interfere with our right to recover from others.

   d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph 4. of the Definitions Section is replaced by the following:

   4.  "Coverage territory" means:

   a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c.  All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;



provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the Definitions Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 16

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0119 48 03 04 .                                                                    Page 6 of 6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** 09.26.2005

**PREMIUM COMPUTATION ENDORSEMENT – DEDUCTIBLE POLICY VERSION**

1. The Deposit Premium set forth in of the Declarations is adjustable, and is only an estimated premium for the Audit Period shown below.

The final earned premium for the Audit Period shall be determined as specified in Item 5. **Premium Audit of SECTION IV – Commercial General Liability Conditions.** The Audit Premium shall be computed by applying the Rate of $ ▮▮ per each $ ▮▮ of the Premium Base identified in 2. below. Such Rate is net of any taxes, licenses, or fees. The final premium calculation is subject to the Minimum Retained Premium as stated in the Declarations.

2. The Premium Base shall be identified in (A) and (B) below:

    (A) PREMIUM BASE

        ☒ gross "sales" excluding "aircraft products"

            ☐ "intercompany sales" and

            ☐ "foreign sales".

        ☐ "Payroll" as determined immediately below:

            ☐ Gross Unmodified "Payroll"

            ☐ Workers Compensation Payroll"

            ☐ Workers Compensation Payroll" excluding:

                (1) "Clerical Office Employees"
                (2) "Salesmen, Collectors, Messengers"
                (3) Drivers and their helpers if principal duties are to work on or in connection with "autos"

        ☐ Other (Describe) _____

        Estimated Exposures    $ ▮▮ _____

    (B) SPECIFIC DELETIONS FROM PREMIUM BASE, IF ANY:

        ☐ Designated Products described in the following endorsements:

        ☐ Designated Operations described in the following endorsements:

        ☐ Other, described in the following endorsements

3. The Audit Period is:

☒ Annual

☐ Semi-Annual

☐ Monthly

☐ Other

4. The Audit Period is measured from the Effective Date of the Insurance Policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 17

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

02 CGL0107 00 09 03

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.** SEP. 26, 2005

## DEDUCTIBLE LIABILITY ENDORSEMENT

### Schedule

1.  Specific coverages to which a deductible(s) applies and amount of deductible(s):

| Coverage | Amount of Deductible |
|---|---|
| ☒ All coverages…………………………………………………………….$ 10,000 | |
| ☐ Products/Completed Operations……………………………………….$ _____ | |
| ☐ All coverages other than Products/Completed Application……………$ _____ | |

2.  The deductible applies to:

    ☒ Indemnity and Expenses
    ☐ Indemnity Only

3.  A deductible aggregate applies as follows:

    ☐ The deductible aggregate amount for all coverages, which is the maximum amount of deductible payments for which the insured is responsible, is:  $ _____ .  The deductible aggregate is subject to adjustment upwards based on a rate of $ _____ per 1000 _____ .  Once the loss payments actually paid by us, and reimbursed by the insured to us, equals the deductible aggregate amount, the insured's deductible will be reduced to $ _____ .  The estimated exposure base, at inception, is $ _____ .

    (If no aggregate is shown, then there is no aggregate on the cumulative amount of deductible payments for which the insured is responsible.)

Application of the Deductible Liability Endorsement

The deductible(s) set forth in the Schedule apply to indemnity and expenses, (or indemnity only if the appropriate box is checked in the Schedule), on a "per occurrence" basis.  The insured is responsible for payment of the deductible(s).

The insured is responsible for all payments within the deductible amount.  Subject to the Limits of Liability and all other terms and conditions for this policy, our obligation to pay damages and expenses on your behalf applies only to the amount of damages and expenses in excess of the deductible amounts set forth in the Schedule.  We may pay part or the entire deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

Our limits of liability are not increased by the presence of a deductible.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 18

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72DPC1446801

Named Insured:

Endorsement Effective Date:

00 CGL0099 00 10 03                                                       Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:
EBENAL GENERAL, INC.
EBENAL GENERAL SPECIAL PROJECTS, INC.
MERIDIAN-PACIFIC HIGHWAY, LLC
BONITA & DAVID EBENAL



All other terms and conditions of this policy remain unchanged.

Endorsement Number:19

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 72 DPC 14468 01

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

Endorsement Effective Date: 04/01/04

00 CGL0072 00 03 03

**Exhibit 3**

## **<u>DECLARATION</u>**

I declare under penalty of perjury under the law of California that the following is true and correct.

Annexed hereto as Exhibit A is a true and accurate copy of Arch Specialty Insurance Company policy number DPC000559100 issued to Ebenal General Contractors, Inc., 4326 Pacific Highway Bellingham, Washington 98226 in effect from April 1, 2005 to April 1, 2006 including any and all applicable endorsements and forms made a part thereof.

Executed on the 1st day of September, 2021, at Corte Madera, CA.


Sean Basco
Regional Vice President, E&S Casualty

# Exhibit A



**✵Arch**

Insurance Group

**ARCH SPECIALTY INSURANCE COMPANY**  FILE COPY

A Wisconsin Corporation

SC 05.18.2005

Home Office Address:
300 First Stamford Place, 5th Floor
Stamford, CT 06902

Administrative Office Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
(800) 817-3252

## COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS

POLICY NUMBER: DPC 0005591 00

RENEWAL OF: 72 DPC 14468 01

EFFECTIVE DATE:   04/01/05
EXPIRATION DATE:   04/01/06
12:01 AM STD Time at the Address of the Named Insured

AGENT CODE:

**Item 1.   Named Insured and Producing Agent**
Named Insured:   EBENAL GENERAL CONTRACTORS, INC.

Mailing Address:   4326 PACIFIC HIGHWAY
BELLINGHAM, WA 98226

Producing Agent:   CRC INSURANCE SERVICES, INC.

Mailing Address:   1420 FIFTH AVENUE
SUITE 1610
SEATTLE, WA 98101

Surplus Line Broker: JO WALKOWSKI
CRC INSURANCE SERVICES, INC.
Mailing Address:   1420 FIFTH AVENUE
SUITE 1610
SEATTLE, WA 98101

Surplus Lines License #: CRCINS*98358

**Item 2. Named Insured Classified as:**

| ☐ Individual | ☐ Partnership | ☒ Corporation |
| ☐ Joint Venture | ☐ LLC | ☐ LLP |

**Item 3.   Limits of Insurance**

| | |
|---|---|
| BODILY INJURY AND PROPERTY DAMAGE LIABILITY – EACH OCCURRENCE | $ 1,000,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT – EACH OFFENSE | $ 1,000,000 |
| MEDICAL EXPENSE LIMIT – ANY ONE PERSON | $ 10,000 |
| GENERAL AGGREGATE LIMIT (Other Than Products – Completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU LIMIT – EACH OCCURRENCE | $ 100,000 |

**Item 4. Policy Premium: $**

Deposit Premium $ ▓▓▓ which is:   ☐ A Flat Charge Per Each Policy Period.

☒ Adjustable at the end of each Audit Period, Per Premium Computation Endorsement

Minimum Retained Audit Premium $ ▓▓▓
Minimum Retained Premium 35%, not subject to adjustment in the event of cancellation by you.

06 CGLD0047 00 06 03

Item 5. Forms and Endorsements attached: See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03

SC 05.18.2005

In consideration of the payment of premium and in reliance upon statements made in the application this policy including all endorsements issued herein shall constitute the contract between the Company and the Named Insured.

Arch Specialty Insurance Company is licensed in the state of Wisconsin only.
Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

06 CGLD0047 00 06 03

## SCHEDULE OF FORMS AND ENDORSEMENTS

**NAMED INSURED:** EBENAL GENERAL CONTRACTORS, INC.    TERM: 4/1/2005 to 4/1/2006
**POLICY NUMBER:** DPC 0005591 00

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 CGLD0047 00 06 03 | COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 06 CGL0098 00 07 03 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | 06 ML0002 00 07 03 | SIGNATURE PAGE |
| | 02 ML 0003 00 08 02 | SERVICE OF SUIT |
| 1 | 00 CGL0108 00 08 04 | BLANKET ADDITIONAL INSURED ENDORSEMENT DEDUCTIBLE VERSION |
| 2 | 00 CGL0130 00 01 04 | OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT |
| 3 | 00 CGL0121 00 01 04 | WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY |
| 4 | 00 CGL0007 00 05 04 | CROSS SUITS EXCLUSION |
| 5 | 02 CGL0018 00 10 02 | INTELLECTUAL PROPERTY EXCLUSION |
| 6 | 00 CGL0080 00 02 05 | RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION |
| 7 | 00 CGL0039 00 12 02 | ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION |
| 8 | 02 CGL0011 00 10 02 | EARTH MOVEMENT OR SUBSIDENCE EXCLUSION |
| 9 | 00 CGL0041 00 12 02 | WRAP-UP EXCLUSION |
| 10 | 00 CGL0016 00 03 04 | EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION |
| 11 | 00 CGL0141 00 03 04 | SILICA EXLCUSION |
| 12 | 00 CGL0092 00 05 03 | CHROMATED COPPER ARSENATE ("CCA:") EXCLUSION |
| 13 | 00 CGL0066 00 02 03 | RADON CONTAMINATION EXCLUSION |
| 14 | 02 CGL0023 00 10 02 | TOTAL POLLUTION EXCLUSION |
| 15 | 00 CGL0125 00 03 05 | SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY |
| 16 | 02 CGL0109 00 09 03 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 17 | 00 CGL0117 00 12 03 | NON-STACKING ENDORSEMENT |
| 18 | 00 CGL0038 00 02 04 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| 19 | 00 CGL0119 48 03 04 | STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON |
| 20 | 02 CGL0107 00 09 03 | PREMIUM COMPUTATION ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 21 | 00 CGL0099 00 10 03 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| 22 | 00 CGL0184 00 01 05 | TOTAL TERRORISM EXCLUSION |
| | | |



## ☆Arch
### Insurance Group

SC 95.18.2005

**ARCH SPECIALTY INSURANCE COMPANY**
**300 First Stamford Place, 5th Floor**
**Stamford, CT 06902**

**COMMERCIAL GENERAL LIABILITY**

**06 CGL0098 00 07 03**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V–DEFINITIONS.**

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance;** and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law(s).

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of **Paragraph (1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or

any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in **Paragraph f.(2) or f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes but is not limited to; civil war, insurrection, usurped power, rebellion or revolution.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**Paragraphs (1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

**Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

**Paragraphs (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**Paragraph (6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of "your product" or any part of "your product".

**l. Damage To Your Work**

"Property damage" to "your work" arising out of "your work" or any part of "your work" and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusions **j.** through **m.** do not apply to damage by fire to premises while rented to

you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III – LIMITS OF INSURANCE.**

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Asbestos**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

q. **Nuclear Liability**

"Bodily injury" or "property damage"

(1) with respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be

an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization; or

(4) under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(a) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(c) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" includes radioactive, toxic or explosive properties.

(2) "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

(5) "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel", or (iii) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(8) "Property damage" includes all forms of radioactive contamination of property.

**r. Employment Related Practices**

Any "bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, act or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c) or (d)** above is directed.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Prior Loss**

Any "bodily injury" or "property damage ", if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy.

**t. Fungi, Mold and Mildew**

"Bodily injury" or "Property damage" arising out of fungi, including but not

limited to, mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**u. Lead**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance** ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to **Paragraphs 14.a., b.** and **c.** of "personal and advertising injury" under **Section V – Definitions.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Fungi, Mold and Mildew**

"Personal and advertising injury" arising out of fungi, including but not limited to,

mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

o. **Employment-Related Practices**

"Personal and Advertising Injury" arising out of employment-related practices to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of a person's employment; or

(c) Employment-related practices, policies, act or omissions, including but not limited to, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c)** or **(d)** above is directed.

This exclusion applies:

(1) Whether or not the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

p. **Asbestos**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or

threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

q. **Lead**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

    provided that:

     (a) The accident takes place in the "coverage territory" and during the policy period;

     (b) The expenses are incurred and reported to us within one year of the date of the accident; and

     (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**                                                 $C 05.18.2005

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under **Coverage A.**

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

i. **Clubs**

If you are a club, to any of your members.

j. **Medical Expenses**

Arising from or in connection with any medical expenses for services by you, any of your employees or any person or organization under a contract to you to provide such services.

k. **Fungi, Mold and Mildew**

Arising out of fungi, including but not limited to, mold or mildew, and any microtoxins, spores, scents, vapors,

gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

l. **Lead**

Arising out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

m. **Asbestos**

Which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

n. **Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of **Paragraph (1)(a)** above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in **Paragraphs (1)(a)** or **(b)** above; or

   (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

   (a) Owned, occupied or used by,

   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. **Coverage A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. **Coverage B** does not apply to "personal and advertising injury" arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under **Coverage C**;

   b. Damages under **Coverage A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under **Coverage B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **Coverage A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **Paragraph 2.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **Paragraphs 2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under **Coverage A**; and

   b. Medical expenses under **Coverage C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **Paragraph 5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to

you or temporarily occupied by you with permission of the owner.

7. Subject to **Paragraph 5.** above, the Medical Expense Limit is the most we will pay under **Coverage C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance apply to the policy period set forth in the Declarations or any endorsements thereto.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   Notice of an "occurrence" or an offense is not notice of a claim.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

This insurance is excess over any other valid and collectible insurance that applies to any claim or "suit" to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance.

## 5. Premium Audit

**a.** We will compute all premiums for this policy in accordance with our rules and rates.

**b.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown . 18 . 2005 as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## 10. Cancellation

06 CGL0098 00 07 03     Includes Copyright Material from Insurance Services Office     Page 13 of 18
With its Permission.

a. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy contains all agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Inspection**

We shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the insured's property or operations, at any time. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the insured or others, or determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

**13. Named Insureds**

a. The First Named Insured is authorized to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

b. Each Named Insured is jointly and severally liable for:

(1) All premiums due under this policy; and

(2) All obligations that arise due to the self-insured retention including claim expenses

(3) Any other financial obligations of the Named Insured to us arising out of any agreements contained in this policy.

**14. Transfer of Your Rights and Duties under this policy**

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death to an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **Paragraph a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **Paragraph a.** above;

      (2) The activities of a person whose home is in the territory described in **Paragraph a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **Paragraph a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A written sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. A written elevator maintenance agreement;

   f. That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

   **Paragraph f.** does not include that part of any written contract or written agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change

orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **Paragraph (2)** above or supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **Paragraphs a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **Paragraphs a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material, in any manner, that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

All "personal and advertising injury" arising out of the same or similar material, regardless of the mode in which such material is communicated, including but not limited to publication by means of Internet, extra-net, email or website, will be considered as arising solely out of one offense.

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard" means:

a. All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another

contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. This does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

SC 05.18.2005

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.



**Arch**
Insurance Group

SC 05.18.2005

Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Ralph E. Jones III

President

Martin J. Nilsen

Secretary

06 ML0002 00 07 03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

SC 05.18.2005

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.    The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

02 ML 0003 00 08 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BLANKET ADDITIONAL INSURED ENDORSEMENT DEDUCTIBLE VERSION

SC 05.18.2005

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION II – WHO IS AN INSURED is amended to include as an additional insured those persons or organizations who are required under a written contract with the Named Insured to be named as an additional insured, but only with respect to liability arising out of your operations, "your work", or premises owned by or rented to you.

As used in this endorsement, the words "you" and "your" refer to the Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER INSURANCE – BROAD FORM, CGL POLICY ENDORSEMENT**  SC 05.18.2005

It is hereby agreed that the following paragraph is added to Section IV, Commercial General Liability Conditions, Item 4:

Where the named insured is required by a written contract to provide insurance that is primary and non-contributory, and the written contract so requiring is executed by the named insured before any loss, this insurance will be primary, but only if and to the extent required by that written contract.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0130 00 01 04                                            Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY  SC 05.18.2005

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

**Name of Person or Organization:**    Where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your operations or your work done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0121 00 01 04        Includes Copyright Material from Insurance Services Office
                                    With its Permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS SUITS EXCLUSION

SC 05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of: damages of one Named Insured against another Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0007 00 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INTELLECTUAL PROPERTY EXCLUSION

SC 05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

any "bodily injury", "property damage", or "personal and advertising injury" arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1. copyright, other than infringement of copyrighted advertising materials;
2. patent;
3. trade secrets;
4. trade dress; or
5. trade mark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:5

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

02 CGL0018 00 10 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION

SC 05.18.2005

This insurance does not apply to and we will have no duty to investigate or defend or provide coverage for any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

1. the development or construction, in whole or in part, or existence of a non-commercial dwelling or residence; or

2. the development or construction of any building, in whole or in part, which has been converted, in whole or part, to a non-commercial dwelling or residence at any time after the inception date of this insurance policy.

For purposes of this endorsement, non-commercial dwellings or residences shall include, but are not limited to, homes, cooperatives, town homes, lofts and condominiums.

However, this exclusion does not apply to the construction, management or ownership of apartment buildings, hotels or motels by you.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 6

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0080 00 02 05                                                                                     Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ENGINEERS, ARCHITECTS OR
### SURVEYORS PROFESSIONAL LIABILITY EXCLUSION

EC  05.18.2005

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

All other terms and conditions of this policy remain unchanged.

Professional services include:

1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.  Supervisory, inspection, architectural or engineering activities.

Endorsement Number:7

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0039 00 12 02          Includes Copyright Material from Insurance Services Office
With its Permission.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EARTH MOVEMENT OR SUBSIDENCE EXCLUSION

$C  05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting or any other similar movement of earth or mud, regardless of whether such movement is a naturally occurring phenomena or is man-made.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 8

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

02 CGL0011 00 10 02                                                                                          Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WRAP-UP EXCLUSION

SC 05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

wrap-ups, owner controlled insurance program, contractor controlled insurance programs, or similar rating program.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:9

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0041 00 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

1.  "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly, in whole or in part, by the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system; or

2.  Any moisture-related or dry rot related "property damage" to a house or other building to which an "exterior insulation and finish system" has been applied, if that "property damage" is caused directly or indirectly, in whole or in part, by the "exterior insulation and finish system";

Regardless of any other cause or event that contributed concurrently or in any sequence to that injury or damage.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

   a)  A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials; and

   b)  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and

   c)  A reinforcing mesh that is embedded in a base coat applied to the insulation board; and

   d)  A finish coat providing surface texture and color.

However, an "exterior insulation and finish system" does not include a cement-based, polymer-enhanced stucco cladding system which:

   a)  Incorporates a weather -resistive barrier pursuant to applicable building codes ; and

   b)  Incorporates ribbed insulation sheathing with ribs aligned vertically to provide drainage; and

   c)  The manufacturer of the stucco components has a valid ICBO Evaluation Services Listing in good standing; and

   d)  There is no mixing of different manufacturer's products for the stucco system

So long as that cement-based, enhanced stucco cladding system satisfies all requirements of the applicable model building code and the applicable local building code.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0016 00 03 04                                                                                    Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SILICA EXCLUSION

SC 05.18.2005

This policy does not apply to:

Any claim, "suit," demand or loss that alleges "bodily injury," "property damage," or "personal and advertising injury" (including but not limited to, compliance with any request, demand, order, or statutory or regulatory requirement or any other action authorized or required by law), including any costs, fees, expenses, penalties, judgments, fines, or sanctions arising therefrom, which arises out of, or relates to, in whole or in part, the "silica hazard" or would not have occurred, in whole or in part, but for the "silica hazard".

As used in this exclusion, "silica hazard" means:

    (1)    actual, alleged or threatened exposure to "silica" either directly or indirectly, or

    (2)    the actual or alleged failure to warn, advise or instruct related to "silica", or

    (3)    the actual or alleged failure to prevent exposure to "silica", or

    (4)    the actual or alleged presence of "silica" whether or not within a building or structure.

As used in this exclusion, "silica" means any substance, regardless of its form or state, containing silicon, including but not limited to silicon, silica, silicates and silicone.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0141 00 03 04                                                     Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CHROMATED COPPER ARSENATE ("CCA") EXCLUSION       EC 05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of any product treated with, preserved with, or containing chromated copper arsenate ("CCA").

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0092 00 05 03                                                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RADON CONTAMINATION EXCLUSION

SC 05.18.2005

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of the presence, ingestion, inhalation or absorption of radon in any form.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:13

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0066 00 02 03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION

SC 05.18.2005

Exclusion 2. f. of SECTION 1- COVERAGES- COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE is deleted and replaced by the following:

**f. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, from any site, premises or location. This exclusion includes but is not limited to:

Any loss, cost, or expense arising out of any:

a) Request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
b) Claim or suit by or on behalf on a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of "pollutants".

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 14

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

02 CGL0023 00 10 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY

SC 05.18.2005

The Conditions of this policy are amended to include the following:

1. Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than $1,000,000 each "occurrence" for "bodily injury" and "property damage" and $1,000,000 per offense for "personal and advertising injury", will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2. The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage", and "personal injury and advertising injury" arising out of the work performed by the "subcontractor."

3. The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4. For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any of the above conditions are not satisfied, a deductible of $100,000 per "occurrence" or offense will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and "personal injury and advertising injury" arising out of the work performed by the "subcontractor" for the insured. (If no deductible amount is shown above, then the deductible will be deemed to be $1,000,000 per "occurrence" or offense).

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an insured and does work or performs services for or on behalf of an insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 15

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND** 05.18.2005
**POLICY AGGREGATE LIMIT ENDORSEMENT – DEDUCTIBLE POLICY VERSION**

| |
|---|
| Designated Construction Projects: ANY CONSTRUCTION PROJECT AT WHICH YOU PERFORM OPERATIONS. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Subject to paragraph F., below, for all sums which the insured becomes legally obligated to pay as damages, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above, damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  **2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

  **3.** Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

  **4.** The limits shown in the Declarations for Each Occurrence for "Bodily Injury and Property Damage Liability", Each Occurrence for "Damages To Premises Rented To You", and Each Offense for "Personal and Advertising Injury" continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** Any payments made under **SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit or the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of **SECTION III – LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

**F.** Regardless of the Number of projects and any other circumstance, the amount we will pay under this insurance policy shall be no more than the "Policy Aggregate" shown below:

Policy Aggregate Limit                    $5,000,000

In the event that no dollar amount is shown next to the Policy Aggregate Limit above, the Policy Aggregate Limit is $10,000,000.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 16

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-STACKING ENDORSEMENT

SE 25.18.2005

If any "occurrence" or offense covered under this policy is also covered in whole or part under any other commercial general liability policy issued to you by us, (or any of our related or affiliated companies), including but not limited to prior policies issued to you by us, (or any of our related or affiliated companies), the most we will pay under all such policies covering the occurrence or offense is the single highest available applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us, (or any of our related or affiliated companies), as insurance that applies excess of this policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 17

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0117 00 12 03                                                                                       Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

SC 05.18.2005

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | Each Employee | $10,000 | Each Employee | ▮▮▮▮ |
| | $1,000,000 | Aggregate | | | |
| Retroactive Date: | 11/10/2003 | | | | |

If no entry appears above with respect to the Aggregate, then the Aggregate limit will be $1,000,000.

If no entry appears above with respect to the Retroactive Date, then the Retroactive Date will be the Policy Period inception date.

A. The following is added to Section I - Coverages:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission by the insured, or of any person for whom the insured is legally liable, in the "administration" of the insureds "employee benefit program", to which this insurance applies.

    But:

    (1) The amount we will pay for damages is limited as described in Paragraph D. of this endorsement; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b. This insurance applies to damages only if:

    (1) The negligent act, error or omission did not take place before the Retroactive date, if any, shown in the Schedule, nor after the end of the policy period; and

    (2) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph F. of this endorsement.

00 CGL0038 00 02 04     Includes Copyright Material from Insurance Services Office     Page 1 of 8
With its Permission.

c.  A "claim" seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

A "claim" received and recorded by the insured within sixty (60) days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.  Exclusions

This insurance does not apply to:

a.  Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.  Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c.  Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d.  Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.  Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1)  Failure of any investment to perform;

(2)  Errors in providing information on past performance of investment vehicles; or

(3)  Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with any workers' compensation, unemployment compensation insurance, social security or disability benefits laws or any similar laws.

g.  ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.  Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.  Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j.  Employment-Related Practices

Damages arising out of employment-related practices to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of a persons employment; or

(c) Employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in paragraphs (a), (b), (c), or (d) above is directed.

This exclusion applies:

(1) Whether or not the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

B.  For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II - Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a.  Each of your "employees" who is or was authorized to administer your "employee benefit program".

b.  Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until ninety (90) days after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

C. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II - Who Is An Insured does not apply.

D. For the purposes of the coverage provided by this endorsement, Section IV - Limits Of Insurance is replaced by the following:

1. Limits Of Insurance

a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program".

b. The Aggregate Limit is the most we will pay for all damages to which this insurance applies.

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) A negligent act, error or omission; or

(2) A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The limits of the coverage provided by this endorsement apply to the policy period set forth in the Declarations or any endorsements thereto.

2. Deductible

a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c. The terms of this insurance, including those with respect to:

(1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

EC 05.18.2005

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV-Commercial General Conditions are replaced by the following:

2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

 Includes Copyright Material from Insurance Services Office With Its Permission.

a.  Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.  Excess Insurance

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c.  Method Of Sharing

Except with respect to the insurance described in item b.(1) above, if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

F.  For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

EXTENDED REPORTING PERIOD

1.  You will have the right to purchase an Extended Reporting Period, as described below, if:

a.  This endorsement is canceled or not renewed; or

b.  We renew or replace this endorsement with insurance that:

(1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

(2) Does not apply to an act, error or omission on a claims-made basis.

2.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first

committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five (5) years is available, but only by an endorsement and for 05.18.2005 an extra charge.

You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The "employee benefit programs" insured;

b. Previous types and amounts of insurance;

c. Limits of insurance available under this endorsement for future payment of damages; and

d. Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period. The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph D.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph D.1.c.

G. For the purposes of the coverage provided by this endorsement only, the following definitions are added to the Section VI-Definitions:

1. "Administration" means:

a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

b. Handling records in connection with the "employee benefit program"; or

c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4.  "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a.  Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b.  Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c.  Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d.  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e.  Any other similar benefits designated in the Schedule or added thereto by endorsement.

I.  For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. In the Definitions Section are replaced by the following:

5   "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 18

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

SC 05.18.2005

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Limits Of Insurance | | |
|---|---|---|
| Bodily Injury By Accident: | $ 1,000,000 | Each Accident |
| Bodily Injury By Disease: | $ 1,000,000 | Aggregate Limit |
| Bodily Injury By Disease: | $ 1,000,000 | Each Employee |

If no entry appears with respect to any of the limits shown above, then the limit will be deemed to be $1,000,000

A. The following is added to Section I – Coverages:

### COVERAGE – STOP GAP – EMPLOYERS LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

(1) The:

(a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

(b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

(c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

(2) The:

00 CGL0119 48 03 04                                                                 Page 1 of 6

(a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

(b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

(1) For:

(a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

### f. Termination, Coercion Or Discrimination

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

### g. Failure To Comply With "Workers Compensation Law"

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1)  Deprived of common law defenses; or

(2)  Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

### h. Violation Of Age Laws Or Employment Of Minors

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1)  Knowingly employed by you in violation of any law as to age; or

(2)  Under the age of 14 years, regardless of any such law.

### i. Federal Laws

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1)  The Federal Employer's Liability Act (45 USC Section 51-60);

(2)  The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3)  The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4)  The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5)  The Defense Base Act (42 USC Sections 1651-1654);

(6)  The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7)  The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8)  Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9)  Any subsequent amendments to the laws listed above.

### j. Punitive Damages

Multiple, exemplary or punitive damages.

### k. Crew Members

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The Supplementary Payments provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

C. For the purposes of this endorsement, Section II – Who Is An Insured, is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, Section III Limits Of Insurance, is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply to the policy period set forth in the Declarations or any endorsements thereto.

E. For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties The Event Of Injury, Claim Or Suit**

a. You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent SC 05.18.2005 possible, notice should include:

(1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

(5) Do nothing after an injury occurs that would interfere with our right to recover from others.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph 4. of the Definitions Section is replaced by the following:

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

00 CGL0119 48 03 04                                                              Page 5 of 6

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

56 05:18:2005

G. The following are added to the Definitions Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 19

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## PREMIUM COMPUTATION ENDORSEMENT – DEDUCTIBLE POLICY VERSION

SC 05.18.2005

1. The Deposit Premium set forth in of the Declarations is adjustable, and is only an estimated premium for the Audit Period shown below.

The final earned premium for the Audit Period shall be determined as specified in Item **5. Premium Audit** of **SECTION IV – Commercial General Liability Conditions**.   The Audit Premium shall be computed by applying the Rate of $███ per each $███ of the Premium Base identified in 2. below.   Such Rate is net of any taxes, licenses, or fees.   The final premium calculation is subject to the Minimum Retained Premium as stated in the Declarations.

2. The Premium Base shall be identified in (A) and (B) below:

    (A)  PREMIUM BASE

        ☒ gross "sales" excluding "aircraft products"

           ☐   "intercompany sales" and

           ☐   "foreign sales".

        ☐ "Payroll" as determined immediately below:

           ☐   Gross Unmodified "Payroll"

           ☐   Workers Compensation Payroll"

           ☐   Workers Compensation Payroll" excluding:

               (1)  "Clerical Office Employees"
               (2)  "Salesmen, Collectors, Messengers"
               (3)  Drivers and their helpers if principal duties are to work on or in connection with "autos"

        ☐  Other (Describe)   _____

        Estimated Exposures   $███_____

    (B)  SPECIFIC DELETIONS FROM PREMIUM BASE, IF ANY:

        ☐  Designated Products described in the following endorsements:

        ☐  Designated Operations described in the following endorsements:

        ☐  Other, described in the following endorsements

3. The Audit Period is:

☒ Annual

☐ Semi-Annual

☐ Monthly

☐ Other

SC 05.18.3005

4. The Audit Period is measured from the Effective Date of the Insurance Policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 20

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

02 CGL0107 00 09 03                                                          Page 2 of 2

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DEDUCTIBLE LIABILITY ENDORSEMENT

### Schedule

SC 05.18.2005

1. Specific coverages to which a deductible(s) applies and amount of deductible(s):

| Coverage | Amount of Deductible |
|---|---|
| ☒ All coverages.................................................................. | $ 10,000 |
| ☐ Products/Completed Operations........................................ | $ _____ |
| ☐ All coverages other than Products/Completed Application.............. | $ _____ |

2. The deductible applies to:

   ☒ Indemnity and Expenses
   ☐ Indemnity Only

3. A deductible aggregate applies as follows:

   ☐ The deductible aggregate amount for all coverages, which is the maximum amount of deductible payments for which the insured is responsible, is: $ _____. The deductible aggregate is subject to adjustment upwards based on a rate of $ _____ per 1000 _____.  Once the loss payments actually paid by us, and reimbursed by the insured to us, equals the deductible aggregate amount, the insured's deductible will be reduced to $ _____.  The estimated exposure base, at inception, is $ _____.

   (If no aggregate is shown, then there is no aggregate on the cumulative amount of deductible payments for which the insured is responsible.)

Application of the Deductible Liability Endorsement

The deductible(s) set forth in the Schedule apply to indemnity and expenses, (or indemnity only if the appropriate box is checked in the Schedule), on a "per occurrence" basis.  The insured is responsible for payment of the deductible(s).

The insured is responsible for all payments within the deductible amount.  Subject to the Limits of Liability and all other terms and conditions for this policy, our obligation to pay damages and expenses on your behalf applies only to the amount of damages and expenses in excess of the deductible amounts set forth in the Schedule.  We may pay part or the entire deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

Our limits of liability are not increased by the presence of a deductible.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 21

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:   .

00 CGL0099 00 10 03

Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### TOTAL TERRORISM EXCLUSION

SC 05.18.2005

This endorsement modifies insurance provided under the Policy.

A.   The following definitions are added:

1.   "Terrorism" means activities against persons, organizations or property of any nature:

   a.   that involve the following or preparation for the following:

      (1)   use or threat of force or violence; or

      (2)   commission or threat of a dangerous act; or

      (3)   commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b.   When:

      (1)   the effect is to intimidate or coerce a government or a  civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

      (2)   it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

2.   "Injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

B.   The following exclusion is added:

### TERRORISM EXCLUSION

We will not pay for any "injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Any "injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such "injury or damage".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:      22

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured:

Endorsement Effective Date:

00 CGL0184 00 01 05                                                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

It is hereby agreed that Item 1: of the Declarations is amended to include the following entities as a Named Insured:
EBENAL GENERAL SPECIAL PROJECTS, INC.

FILE COPY

All other terms and conditions of this policy remain unchanged.

Endorsement Number:23

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 00

Named Insured: EBENAL GENERAL CONTRACTORS, INC.

Endorsement Effective Date: 04/01/05

00 CGL0072 00 03 03

# FILE COPY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that Endorsement 23, Named Insured Endorsement, Form #00 CGL0072 00 03 03, is amended to include the following entity as a Named Insured:

MERIDIAN-PACIFIC HIGHWAY,LLC

All other terms and conditions of this Policy remain unchanged.

Issued By: Arch Specialty Insurance Company

Endorsement Number:24

Policy Number: DPC 0005591 00

Named Insured: Ebenal General Contractors, Inc.

Endorsement Effective Date: 04/01/05

*Ralph C. Jones*

President

00 ML0207 00 11 03                                                                                        Page 1 of 1

Arch Insurance
Operations

MAY 1 3 2005

Mercy Ameruoso

Initial :

ARCH SPECIALTY INSURANCE COMPANY
ADMINISTRATIVE OFFICE
ONE LIBERTY PLAZA, 53RD FLOOR
NEW YORK NY 10006

## NOTICE OF CANCELLATION OF INSURANCE

SC 05.16.2005

Named Insured & Mailing Address:

EBENAL GENERAL CONTRACTORS, INC.
4326 PACIFIC HIGHWAY
BELLINGHAM WA 98226

Producer: 00157

CRC INSURANCE SERVICES, INC.
P.O. BOX 11407
BIRMINGHAM AL 35246-0338

Policy No.: DPC000559100
Type of Policy: GENERAL LIABILITY CLAIMS MADE
Date of Cancellation: 05/26/2005; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We are cancelling this policy. Your insurance will cease on the Date of Cancellation shown above.

The reason for cancellation is non payment of premium. Your insurance will cease on the date of cancellation shown above and your policy of insurance will be cancelled as of the effective date shown on your policy.

# Home Office Copy

Named Insured

EBENAL GENERAL CONTRACTORS, INC.
4326 PACIFIC HIGHWAY
BELLINGHAM WA 98226

Date Mailed:
12th day of May, 2005

AUTHORIZED REPRESENTATIVE

FORM# CC9697WA51995
ODEN 3.0.05.05s

Copy for Named Insured

WACC14NONPMNT
05122005INNY
Page 1 of 1

# Exhibit 4

## <u>DECLARATION</u>

I declare under penalty of perjury under the law of California that the following is true and correct.

Annexed hereto as Exhibit A is a true and accurate copy of Arch Specialty Insurance Company policy number DPC000559101 issued to Ebenal General Contractors, Inc., 4326 Pacific Highway Bellingham, Washington 98226 in effect from April 1, 2006 to April 1, 2007 including any and all applicable endorsements and forms made a part thereof.

Executed on the 1st day of September, 2021, at Corte Madera, CA.


Sean Basco
Regional Vice President, E&S Casualty

# Exhibit A



# FILE COPY

## ARCH SPECIALTY INSURANCE COMPANY
### (A Wisconsin Corporation)

| | |
|---|---|
| Home Office Address:<br>300 First Stamford Place, 5th Floor<br>Stamford, CT 06902 | Administrative Address:<br>One Liberty Plaza, 53rd Floor<br>New York, NY 10006<br>Tel: (800) 817-3252 |

## COMMERCIAL GENERAL LIABILITY POLICY

## DECLARATIONS

Policy No.:  DPC 0005591 01          Renewal of:  DPC 0005591 00

**Effective Date:** 04/01/06
**Expiration Date:** 04/01/07
*At 12:01 am standard time at the mailing address of the Named Insured shown below.*

**Item 1.  Named Insured and Producer**

| | |
|---|---|
| Named Insured: | EBENAL GENERAL CONTRACTORS, INC. |
| Mailing Address: | 4326 PACIFIC HIGHWAY<br>BELLINGHAM, WA 98226 |
| | |
| Producer: | CRC INSURANCE SERVICES, INC. |
| Mailing Address: | 1420 FIFTH AVE.<br>SUITE 1610<br>SEATTLE, WA 98101 |
| | |
| Surplus Line Producer: | JO WALKOWSKI<br>CRC INSURANCE SERVICES, INC. |
| Mailing Address: | 1420 FIFTH AVE.<br>SUITE 1610<br>SEATTLE, WA 98101 |

Surplus Lines License Number:  CRCINS*98358

**Item 2.  Named Insured Classified as**

☐ Individual        ☐ Partnership      ☒ Corporation    ☐ Trust
☐ Joint Venture   ☐ LLC                ☐ LLP              ☐ Other

**Item 3.  Limits of Insurance**

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any one person or organization |
| Damage to Premises Rented to You Limit | $ 100,000 | Any one premises |

| | | |
|---|---|---|
| Medical Expense Limit | $ 5,000 | Any one person |
| General Aggregate Limit (Other Than Products – Completed Operations) | $ 2,000,000 | |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 | |

**Item 4.** **Policy Premium: $** ▮

Deposit Premium: $ ▮    ☐ A flat charge per each policy period
                                     ☒ Adjustable, per the Premium Computation Endorsement

Minimum Retained Audit Premium: $ ▮

Minimum Retained Premium: 35 %   of Deposit Premium, not subject to adjustment in the event of cancellation by you.

**Item 5.** **Forms & Endorsements attached:**   See Schedule of Forms and Endorsements Form 00 ML0012 00 01 03

**IN CONSIDERATION OF THE PAYMENT OF PREMIUM AND IN RELIANCE UPON STATEMENTS MADE IN THE APPLICATION, THIS POLICY INCLUDING ALL ENDORSEMENTS ISSUED HEREIN SHALL CONSTITUTE THE CONTRACT BETWEEN THE COMPANY AND THE NAMED INSURED.**

Arch Specialty Insurance Company is licensed in the state of Wisconsin only.
Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

06 CGL0047 00 08 05                                  Page 2 of 2

# SCHEDULE OF FORMS AND ENDORSEMENTS

**NAMED INSURED:** EBENAL GENERAL CONTRACTORS, INC.    **TERM:** 4/1/2006  to  4/1/2007
**POLICY NUMBER:** DPC 0005591 01

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 CGL0047 00 08 05 | COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 06 CGL0098 00 07 03 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | 06 ML0002 00 07 03 | SIGNATURE PAGE |
| | 02 ML0003 00 08 02 | SERVICE OF SUIT |
| 1 | 00 CGL0108 00 08 04 | BLANKET ADDITIONAL INSURED ENDORSEMENT DEDUCTIBLE VERSION |
| 2 | 00 CGL0130 00 01 04 | OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT |
| 3 | 00 CGL0121 00 01 04 | WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY |
| 4 | 00 CGL0007 00 05 04 | CROSS SUITS EXCLUSION |
| 5 | 02 CGL0018 00 10 02 | INTELLECTUAL PROPERTY EXCLUSION |
| 6 | 00 CGL0080 00 01 06 | RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION |
| 7 | 00 CGL0039 00 12 02 | ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION |
| 8 | 02 CGL0011 00 10 02 | EARTH MOVEMENT OR SUBSIDENCE EXCLUSION |
| 9 | 00 CGL0041 00 12 02 | WRAP-UP EXCLUSION |
| 10 | 00 CGL0016 00 03 04 | EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION |
| 11 | 00 CGL0141 00 03 04 | SILICA EXCLUSION |
| 12 | 00 CGL0092 00 05 03 | CHROMATED COPPER ARSENATE ("CCA") EXCLUSION |
| 13 | 00 CGL0066 00 02 03 | RADON CONTAMINATION EXCLUSION |
| 14 | 02 CGL0023 00 10 02 | TOTAL POLLUTION EXCLUSION |
| 15 | 02 CGL0010 00 10 02 | DESIGNATED WORK - EXCLUSION |
| 16 | 00 CGL0038 00 02 04 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| 17 | 00 CGL0119 48 03 04 | STOP-GAP EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON |
| 18 | 00 CGL0072 00 03 03 | NAMED INSURED ENDORSEMENT |
| 19 | 00 CGL0125 00 03 05 | SUBCONTRACTOR ENDORSEMENT: DEDUCTIBLE POLICY |
| 20 | 00 CGL0109 00 01 06 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE  LIMIT ENDORSEMENT - DEDUCTIBLE POLICY VERSION |
| 21 | 00 CGL0117 00 12 03 | NON-STACKING ENDORSEMENT |
| 22 | 00 CGL0220 00 01 06 | TOTAL TERRORISM EXCLUSION |
| 23 | 00 CGL0107 00 07 05 | PREMIUM COMPUTATION ENDORSEMENT - DEDUCTIBLE POLICY - VERSION I |
| 24 | 00 CGL0099 00 12 05 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |



## Arch
### Insurance Group

**ARCH SPECIALTY INSURANCE COMPANY**
**300 First Stamford Place, 5th Floor**
**Stamford, CT 06902**

**COMMERCIAL GENERAL LIABILITY**

**06 CGL0098 00 07 03**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V–DEFINITIONS.**

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance**; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law(s).

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **Paragraph (1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

      **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or

any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in **Paragraph f.(2) or f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes but is not limited to; civil war, insurrection, usurped power, rebellion or revolution.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**Paragraphs (1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

**Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

**Paragraphs (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**Paragraph (6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of "your product" or any part of "your product".

**l. Damage To Your Work**

"Property damage" to "your work" arising out of "your work" or any part of "your work" and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusions **j.** through **m.** do not apply to damage by fire to premises while rented to

you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III – LIMITS OF INSURANCE.**

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Asbestos**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**q. Nuclear Liability**

"Bodily injury" or "property damage"

**(1)** with respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be

an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

**(3)** under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization; or

**(4)** under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(a)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" includes radioactive, toxic or explosive properties.

(2) Nuclear material" means "source material", "Special nuclear material" or "by-product material".

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

(5) "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for **(i)** separating the isotopes of uranium or plutonium, **(ii)** processing or utilizing "spent fuel", or **(iii)** handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations

conducted on such site and all premises used for such operations.

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(8) "Property damage" includes all forms of radioactive contamination of property.

**r. Employment Related Practices**

Any "bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, act or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

   (d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c) or (d)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Prior Loss**

Any "bodily injury" or "property damage ", if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the inception date of the policy.

**t. Fungi, Mold and Mildew**

"Bodily injury" or "Property damage" arising out of fungi, including but not

limited to, mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**u. Lead**

"Bodily injury" or "property damage", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance** ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or medical expenses under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 Includes Copyright Material from Insurance Services Office With its Permission.

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to **Paragraphs 14.a., b.** and **c.** of "personal and advertising injury" under **Section V – Definitions.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Fungi, Mold and Mildew**

"Personal and advertising injury" arising out of fungi, including but not limited to, mold or mildew, and any microtoxins, spores, scents, vapors, gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**o. Employment-Related Practices**

**"Personal and Advertising Injury" arising out of employment-related practices to:**

**(1)** A person arising out of any:

**(a)** Refusal to employ;

**(b)** Termination of a person's employment; or

**(c)** Employment-related practices, policies, act or omissions, including but not limited to, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(d)** Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

**(2)** any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in **Paragraphs (a), (b), (c)** or **(d)** above is directed.

This exclusion applies:

**(1)** Whether or not the insured may be held liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

**p. Asbestos**

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or

threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

### q. Lead

"Personal and advertising injury", including but not limited to, compliance with any action authorized or required by law, which arises out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

    provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while taking part in athletics.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under **Coverage A**.

### h. War

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

### i. Clubs

If you are a club, to any of your members.

### j. Medical Expenses

Arising from or in connection with any medical expenses for services by you, any of your employees or any person or organization under a contract to you to provide such services.

### k. Fungi, Mold and Mildew

Arising out of fungi, including but not limited to, mold or mildew, and any microtoxins, spores, scents, vapors,

gases, or byproducts produced or released by fungi, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that liability, damage, loss, cost, expense or other type of obligation.

**l. Lead**

Arising out of, in whole or in part, the ingestion, inhalation, absorption or exposure to lead, either directly or indirectly, in any manner or form whatsoever.

**m. Asbestos**

Which arises out of or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, the failure to warn, advise or instruct related to asbestos, the failure to prevent exposure to asbestos, or the presence of asbestos in any place whatsoever, whether or not within a building or structure.

**n. Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All costs taxed against the insured in the "suit".

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under **Coverage C**;

   b. Damages under **Coverage A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under **Coverage B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **Coverage A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **Paragraph 2.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **Paragraphs 2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under **Coverage A;** and

   b. Medical expenses under **Coverage C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **Paragraph 5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to

you or temporarily occupied by you with permission of the owner.

7. Subject to **Paragraph 5.** above, the Medical Expense Limit is the most we will pay under **Coverage C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance apply to the policy period set forth in the Declarations or any endorsements thereto.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or an offense is not notice of a claim.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

This insurance is excess over any other valid and collectible insurance that applies to any claim or "suit" to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance.

### 5. Premium Audit

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will

compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 10. Cancellation

**a.** The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy contains all agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Inspection**

We shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the insured's property or operations, at any time. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the insured or others, or determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

**13. Named Insureds**

**a.** The First Named Insured is authorized to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

**b.** Each Named Insured is jointly and severally liable for:

**(1)** All premiums due under this policy; and

**(2)** All obligations that arise due to the self-insured retention including claim expenses

**(3)** Any other financial obligations of the Named Insured to us arising out of any agreements contained in this policy.

**14. Transfer of Your Rights and Duties under this policy**

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death to an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **Paragraph a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **Paragraph a.** above;

      (2) The activities of a person whose home is in the territory described in **Paragraph a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **Paragraph a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A written sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. A written elevator maintenance agreement;

   f. That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

      **Paragraph f.** does not include that part of any written contract or written agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change

orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **Paragraph (2)** above or supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **Paragraphs a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **Paragraphs a., b., c.** or **d..** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

All "personal and advertising injury" arising out of the same or similar material, regardless of the mode in which such material is communicated, including but not limited to publication by means of Internet, extra-net, email or website, will be considered as arising solely out of one offense.

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard" means:

**a.** All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another

contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** This does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.



**Insurance Group**

Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Ralph E. Jones III

President

Martin J. Nilsen

Secretary

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.   The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

02 ML0003 00 08 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BLANKET ADDITIONAL INSURED ENDORSEMENT
## DEDUCTIBLE VERSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with the Named Insured to be named as an additional insured, but only with respect to liability arising out of your operations, "your work", or premises owned by or rented to you.

As used in this endorsement, the words "you" and "your" refer to the Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0108 00 08 04                                                                                       Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT

It is hereby agreed that the following paragraph is added to Section IV, Commercial General Liability Conditions, Item 4:

Where the named insured is required by a written contract to provide insurance that is primary and non-contributory, and the written contract so requiring is executed by the named insured before any loss, this insurance will be primary, but only if and to the extent required by that written contract.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0130 00 01 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OF SUBROGATION ENDORSEMENT DEDUCTIBLE POLICY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

**Name of Person or Organization:**    Where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your operations or your work done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0121 00 01 04      Includes Copyright Material from Insurance Services Office
With its Permission

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS SUITS EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of: damages of one Named Insured against another Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 4

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0007 00 05 04                                                                                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INTELLECTUAL PROPERTY EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

any "bodily injury", "property damage", or "personal and advertising injury" arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

1. copyright, other than infringement of copyrighted advertising materials;
2. patent;
3. trade secrets;
4. trade dress; or
5. trade mark or service mark or certification mark or collective mark or trade name, other than trademarked or service marked titles or slogans.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:5

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

02 CGL0018 00 10 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

This insurance does not apply to any claim, "suit", demand or loss that alleges, in whole or in part:

**A.** "Bodily injury", "property damage", or "personal and advertising injury" that in any way arises out of, relates to or results from the development or construction, in whole or in part, of any:

1) "Non-commercial dwelling or residence"; or

2) Building converted at any time, in whole or in part, to a "non-commercial dwelling or residence".

**B.** "Property damage" included within the "products-completed operations hazard" to any:

1) "Non-commercial dwelling or residence"; or

2) Building which is converted, in whole or in part, to a "non-commercial dwelling or residence" at any time.

For purposes of this endorsement, "non-commercial dwellings or residences" include, but are not limited to, homes, condominiums, cooperatives, town homes, lofts and time-share properties. However, "non-commercial dwellings or residences" do not include:

1) Apartment buildings wherein all of the residential units are held for rental or lease to the general public;

2) Hotels or motels, except any units within or otherwise part of such hotels or motels that are condominiums, time-share properties or similar types of property sold to others.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 6

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0080 00 01 06                                                                                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ENGINEERS, ARCHITECTS OR
## SURVEYORS PROFESSIONAL LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.  Supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 7

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EARTH MOVEMENT OR SUBSIDENCE EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting or any other similar movement of earth or mud, regardless of whether such movement is a naturally occurring phenomena or is man-made.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 8

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

02 CGL0011 00 10 02                                                                                              Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## WRAP-UP EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

wrap-ups, owner controlled insurance program, contractor controlled insurance programs, or similar rating program.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:9

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0041 00 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXTERIOR INSULATION AND FINISH SYSTEM EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:

1.  "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly, in whole or in part, by the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system; or

2.  Any moisture-related or dry rot related "property damage" to a house or other building to which an "exterior insulation and finish system" has been applied, if that "property damage" is caused directly or indirectly, in whole or in part, by the "exterior insulation and finish system";

Regardless of any other cause or event that contributed concurrently or in any sequence to that injury or damage.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

> a)  A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials; and
>
> b)  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and
>
> c)  A reinforcing mesh that is embedded in a base coat applied to the insulation board; and
>
> d)  A finish coat providing surface texture and color.

However, an "exterior insulation and finish system" does not include a cement-based, polymer-enhanced stucco cladding system which:

> a)  Incorporates a weather -resistive barrier pursuant to applicable building codes ; and
>
> b)  Incorporates ribbed insulation sheathing with ribs aligned vertically  to provide drainage; and
>
> c)  The manufacturer of the stucco components has a valid ICBO Evaluation Services Listing in good standing; and
>
> d)  There is no mixing of different manufacturer's products for the stucco system

So long as that cement-based, enhanced stucco cladding system satisfies all requirements of the applicable model building code and the applicable local building code.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0016 00 03 04                                                                            Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA EXCLUSION

This policy does not apply to:

Any claim, "suit," demand or loss that alleges "bodily injury," "property damage," or "personal and advertising injury" (including but not limited to, compliance with any request, demand, order, or statutory or regulatory requirement or any other action authorized or required by law), including any costs, fees, expenses, penalties, judgments, fines, or sanctions arising therefrom, which arises out of, or relates to, in whole or in part, the "silica hazard" or would not have occurred, in whole or in part, but for the "silica hazard".

As used in this exclusion, "silica hazard" means:

    (1)     actual, alleged or threatened exposure to "silica" either directly or indirectly, or

    (2)     the actual or alleged failure to warn, advise or instruct related to "silica", or

    (3)     the actual or alleged failure to prevent exposure to "silica", or

    (4)     the actual or alleged presence of "silica" whether or not within a building or structure.

As used in this exclusion, "silica" means any substance, regardless of its form or state, containing silicon, including but not limited to silicon, silica, silicates and silicone.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 11

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0141 00 03 04                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CHROMATED COPPER ARSENATE ("CCA") EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of any product treated with, preserved with, or containing chromated copper arsenate ("CCA").

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:12

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0092 00 05 03 Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RADON CONTAMINATION EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of the presence, ingestion, inhalation or absorption of radon in any form.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:13

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0066 00 02 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TOTAL POLLUTION EXCLUSION

**Exclusion 2. f.** of **SECTION 1- COVERAGES- COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE** is deleted and replaced by the following:

**f. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, from any site, premises or location. This exclusion includes but is not limited to:

Any loss, cost, or expense arising out of any:

a) Request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
b) Claim or suit by or on behalf on a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of "pollutants".

All other terms and conditions of this policy remain unchanged.

Endorsement Number:14

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

02 CGL0023 00 10 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DESIGNATED WORK - EXCLUSION

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:  "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule below.

SCHEDULE

Description of your work: ANY OF "YOUR WORK" RELATED TO APARTMENTS OR APARTMENT BUILDINGS.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:15

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:
02 CGL0010 00 10 02    Includes Copyright Material from Insurance Services Office
With its Permission

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | Each Employee | $10,000 | Each Employee | |
| | $1,000,000 | Aggregate | | | |
| Retroactive Date: | 11/10/2003 | | | | |

If no entry appears above with respect to the Aggregate, then the Aggregate limit will be $1,000,000.

If no entry appears above with respect to the Retroactive Date, then the Retroactive Date will be the Policy Period inception date.

A. The following is added to Section I - Coverages:

COVERAGE - EMPLOYEE BENEFITS LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission by the insured, or of any person for whom the insured is legally liable, in the "administration" of the insureds "employee benefit program", to which this insurance applies.

    But:

    (1) The amount we will pay for damages is limited as described in Paragraph D. of this endorsement; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b. This insurance applies to damages only if:

    (1) The negligent act, error or omission did not take place before the Retroactive date, if any, shown in the Schedule, nor after the end of the policy period; and

    (2) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph F. of this endorsement.

Includes Copyright Material from Insurance Services Office
With its Permission.

c.  A "claim" seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

A "claim" received and recorded by the insured within sixty (60) days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.  Exclusions

This insurance does not apply to:

a.  Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.  Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c.  Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d.  Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.  Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1)  Failure of any investment to perform;

(2)  Errors in providing information on past performance of investment vehicles; or

(3)  Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with any workers' compensation, unemployment compensation insurance, social security or disability benefits laws or any similar laws.

g.  ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.  Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.  Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j.  Employment-Related Practices

Damages arising out of employment-related practices to:

(1) A person arising out of any:

(a) Refusal to employ;

(b) Termination of a persons employment; or

(c) Employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(d) Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2) any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in paragraphs (a), (b), (c), or (d) above is directed.

This exclusion applies:

(1) Whether or not the insured may be held liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

B.  For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II - Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a.  Each of your "employees" who is or was authorized to administer your "employee benefit program".

b.  Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    a. Coverage under this provision is afforded only until ninety (90) days after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

C. For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II - Who Is An Insured does not apply.

D. For the purposes of the coverage provided by this endorsement, Section IV - Limits Of Insurance is replaced by the following:

  1. Limits Of Insurance

    a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought;

      (3) Persons or organizations making "claims" or bringing "suits";

      (4) Acts, errors or omissions; or

      (5) Benefits included in your "employee benefit program".

    b. The Aggregate Limit is the most we will pay for all damages to which this insurance applies.

    c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      (1) A negligent act, error or omission; or

      (2) A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The limits of the coverage provided by this endorsement apply to the policy period set forth in the Declarations or any endorsements thereto.

  2. Deductible

    a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    c. The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV-Commercial General Conditions are replaced by the following:

2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit' is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a.  Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.  Excess Insurance

(1)  This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2)  When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3)  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4)  We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c.  Method Of Sharing

Except with respect to the insurance described in item b.(1) above, if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

F.  For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

EXTENDED REPORTING PERIOD

1.  You will have the right to purchase an Extended Reporting Period, as described below, if:

a.  This endorsement is canceled or not renewed; or

b.  We renew or replace this endorsement with insurance that:

(1)  Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

(2)  Does not apply to an act, error or omission on a claims-made basis.

2.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first

committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five (5) years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

   The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period. The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph D.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph D.1.c.

G. For the purposes of the coverage provided by this endorsement only, the following definitions are added to the Section VI-Definitions:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5 "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 16

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Limits Of Insurance | | |
|---|---|---|
| **Bodily Injury By Accident:** | $ 1,000,000 | **Each Accident** |
| **Bodily Injury By Disease:** | $ 1,000,000 | **Aggregate Limit** |
| **Bodily Injury By Disease:** | $ 1,000,000 | **Each Employee** |
| | | |

If no entry appears with respect to any of the limits shown above, then the limit will be deemed to be $1,000,000

A. The following is added to Section I – Coverages:

**COVERAGE – STOP GAP – EMPLOYERS LIABILITY**

   **1. Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

   (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b.  This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

   (1) The:

   (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

   (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

   (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

   (2) The:

00 CGL0119 48 03 04                                                                                 Page 1 of 6

    (a)   "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

    (b)   "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

   (1)   For:

      (a)  Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

      (b)  Care and loss of services; and

      (c)  Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

      provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

   (2)   Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1) Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8) Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9) Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The Supplementary Payments provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

C. For the purposes of this endorsement, Section II – Who Is An Insured, is replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, Section III Limits Of Insurance, is replaced by the following:

1. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply to the policy period set forth in the Declarations or any endorsements thereto.

E. For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties The Event Of Injury, Claim Or Suit**

    a.  You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

        (1)  How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any injury.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

        (2)  Authorize us to obtain records and other information;

        (3)  Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

        (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

        (5)  Do nothing after an injury occurs that would interfere with our right to recover from others.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F.  For the purposes of this endorsement, Paragraph 4. of the Definitions Section is replaced by the following:

    4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c.  All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the Definitions Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 17

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NAMED INSURED ENDORSEMENT

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:
EBENAL GENERAL CONTRACTORS, INC.
EBENAL GENERAL SPECIAL PROJECTS, INC.
MERIDIAN PACIFIC HIGHWAY, LLC

All other terms and conditions of this policy remain unchanged.

Endorsement Number:18

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0072 00 03 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SUBCONTRACTOR ENDORSEMENT:  DEDUCTIBLE POLICY**

The Conditions of this policy are amended to include the following:

1. Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than $1,000,000 each "occurrence" for "bodily injury" and "property damage" and $1,000,000 per offense for "personal and advertising injury", will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2. The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage", and "personal injury and advertising injury" arising out of the work performed by the "subcontractor."

3. The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4. For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any of the above conditions are not satisfied, a deductible of $100,000 per "occurrence" or offense will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and "personal injury and advertising injury" arising out of the work performed by the "subcontractor" for the insured. (If no deductible amount is shown above, then the deductible will be deemed to be $1,000,000 per "occurrence" or offense).

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an insured and does work or performs services for or on behalf of an insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 19

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT – DEDUCTIBLE POLICY VERSION**

**SCHEDULE**

Designated Construction Projects:
    ANY CONSTRUCTION PROJECT AT WHICH YOU PERFORM OPERATIONS.

**A.**    Subject to paragraph F. below, for all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE (SECTION I)** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    **1.**    A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

    **2.**    The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE (SECTION I)**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", regardless of the number of:

        **a.**    Insureds;

        **b.**    Claims made or "suits" brought; or

        **c.**    Persons or organizations making claims or bringing "suits".

    **3.**    Any payments made under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE (SECTION I)** for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

    **4.**    The limits shown in the Declarations for Each Occurrence and for Damage To Premises Rented To You continue to apply.  However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.**    For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE (SECTION I)**, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    **1.**    Any payments made under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE (SECTION I)** for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

    **2.**    Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C.   When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit or the Designated Construction Project General Aggregate Limit.

D.   If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E.   The provisions of **SECTION III – LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

F.   Regardless of the number of projects and any other circumstance, the amount we will pay under this insurance policy shall be no more than the Policy Aggregate Limit shown below:

Policy Aggregate Limit        $5,000,000

In the event that no dollar amount is shown next to the Policy Aggregate Limit above, the Policy Aggregate Limit is $10,000,000.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 20

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-STACKING ENDORSEMENT

If any "occurrence" or offense covered under this policy is also covered in whole or part under any other commercial general liability policy issued to you by us, (or any of our related or affiliated companies), including but not limited to prior policies issued to you by us, (or any of our related or affiliated companies), the most we will pay under all such policies covering the occurrence or offense is the single highest available applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us, (or any of our related or affiliated companies), as insurance that applies excess of this policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 21

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0117 00 12 03                                                                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## TOTAL TERRORISM EXCLUSION

This endorsement modifies insurance provided under this policy.

**A.**    The following definitions are added and apply under this endorsement whenever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

   **1.**   "Terrorism" means activities against persons, organizations or property of any nature:

   **a.**   That involve the following or preparation for the following:

   **(1)**   use or threat of force or violence; or

   **(2)**   commission or threat of a dangerous act; or

   **(3)**   commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   **b.**   When:

   **(1)**   the effect is to intimidate or coerce a government or a civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

   **(2)**   it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

   **2.**   "Any injury or damage" means any injury or damage covered under this policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in this policy.

**B.**    The following exclusion is added:

**EXCLUSION OF TERRORISM**

This insurance does not apply to any claim, "suit", demand, or loss that alleges "any injury or damage" that, in any way, in whole or in part, arises out of, relates to or results from "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism".  "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion also applies when one or more of the following are attributed to an incident of "terrorism":

   **1.**   The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

   **2.**   Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

   **3.**   The "terrorism" involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction, nuclear radiation or radioactive contamination; or

4. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 22

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0220 00 01 06                                                                                      Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## PREMIUM COMPUTATION ENDORSEMENT-
## DEDUCTIBLE POLICY – VERSION I

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.  The Deposit Premium set forth in **Item 4** of the Declarations is adjustable, and is only an estimated premium for the Audit Period shown below.

    The final earned premium for the Audit Period shall be determined as specified in Item **5 Premium Audit** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS.** The Audit Premium shall be computed by applying the Rate of ▇▇▇▇▇▇ per each $▇▇▇▇ of the Premium Base identified in 2 below. Such Rate is net of any taxes, licenses, or fees. However, the final premium calculation for the policy period shall be no less than the Minimum Retained Audit Premium as stated in **Item 4** the Declarations.

    Unless otherwise specified in this Policy, the Audit Period will be the same as the policy period; or if this policy is cancelled, the Audit Period will be from the Effective Date of the policy to the effective date of cancellation.

2.  The Premium Base shall be identified in (A) and (B) below:

    (A)  PREMIUM BASE

         ☒  Gross "sales" excluding "aircraft products"

             ☒  "intercompany sales" and

             ☒  "foreign sales".

         ☐  "Payroll" as determined immediately below:

             ☐  Gross Unmodified "Payroll"

             ☐  Workers Compensation Payroll"

             ☐  Workers Compensation Payroll" excluding:

                 (1)  "Clerical Office Employees"

                 (2)  "Salesmen, Collectors, Messengers"

                 (3)  Drivers and their helpers if principal duties are to work on or in connection with "autos"

         ☐  Other (Describe) _____

             Estimated Exposures    $▇▇▇▇▇ _____

    (B)  SPECIFIC DELETIONS FROM PREMIUM BASE, IF ANY:

         ☐  Designated Products: _____

         ☐  Designated Operations: _____

00 CGL0107 00 07 05                                                        Page 1 of 2

☐   Other: _____

3.   The following paragraph **g** is added to condition **10 Cancellation** (in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS)**:

**g.**   If this policy is cancelled, the Minimum Retained Audit Premium shown in **Item 4** of the Policy Declarations will be pro-rated commensurate with the resulting coverage period, and that pro-rated amount will be the new Minimum Retained Audit Premium. Notwithstanding the premium calculation determined by a premium audit, the amount of the Deposit Premium that we retain shall be no less than the pro-rated Minimum Retained Audit Premium. In the event that the First Named Insured cancels the policy, then the amount of the Deposit Premium that we retain shall be no less than the pro-rated Minimum Retained Audit Premium, or the Minimum Retained Premium shown in **Item 4** of the Policy Declarations, whichever is greater.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 23

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

**DEDUCTIBLE LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| **Schedule** |
| --- |

1.  Specific coverages to which a deductible(s) applies and amount of deductible(s):

| Coverage | Amount of Deductible |
| --- | --- |
| ☒ All coverages……………………………………………… | $ 10,000 |
| ☐ Products/Completed Operations…………………………………. | $ _____ |
| ☐ All coverages other than Products/Completed Operations | $ _____ |

2.  The deductible applies to:

☒ Damages and Supplementary Payments
☐ Damages Only

3.  A Deductible Aggregate applies as follows:

☐ The deductible(s) shown in item 1 of this Schedule is subject to a Deductible Aggregate amount of $ _____.   The Deductible Aggregate is subject to adjustment upwards based on a rate of $ _____ per _____.  Such adjustment will be made on a pro-rata basis in the proportion that the final exposure base for the policy period bears to the estimated exposure base as of the Effective Date of this policy, which is $ _____. Subject to the foregoing, once the loss payments actually paid by us, and reimbursed by you to us, equals the Deductible Aggregate amount, your deductible(s) (shown in item 1. above) will be reduced to $ _____.

(If no Deductible Aggregate is shown, then there is no aggregate on the cumulative amount of deductible payments for which the insured is responsible.)

Application of the Deductible Liability Endorsement

The deductible(s) set forth in the Schedule apply to damages and Supplementary Payments, (or damages only if the appropriate box is checked in the Schedule), on a per-"occurrence" or per-offense basis. The insured is responsible for payment of the deductible(s).

The insured is responsible for all payments within the deductible amount. Subject to the Limits of Insurance and all other terms and conditions for this policy, our obligation to pay damages and expenses on your behalf applies only to the amount of damages and expenses in excess of the deductible amounts set forth in the Schedule.  We may pay part or the entire deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

The Limits of Insurance are not increased by the presence of a deductible.

All other terms and conditions of this Policy remain unchanged.


Endorsement Number: 24

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured:

Endorsement Effective Date:

00 CGL0099 00 12 05                                                                                       Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:
EBENAL GENERAL CONTRACTORS, INC.
EBENAL GENERAL SPECIALTY PROJECTS, INC.
MERIDIAN PACIFIC HIGHWAY, LLC
ROCKPORT HOLDINGS LLC

All other terms and conditions of this policy remain unchanged.

Endorsement Number:26

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 01

Named Insured: Ebenal General Contractors, Inc.

Endorsement Effective Date: 07/12/06

00 CGL0072 00 03 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT SUBSTITUTION**

1.  Endorsement number 18, titled "Named Insured Endorsement", Form 00 CGL0072 00 03 03, is hereby deleted from this policy effective 7/12/06.

2.  Endorsement number 26, titled "Named Insured Endorsement", Form 00 CGL0072 00 03 03, is hereby added to this policy effective 7/12/06.

All other terms and conditions of this Policy remain unchanged.

Issued By: Arch Specialty Insurance Company

Endorsement Number:25

Policy Number: DPC 0005591 01

Named Insured: Ebenal General Contractors, Inc.

Endorsement Effective Date: 7/12/2006

*Mark D. Lyons*

President

00 ML0207 00 11 03                                                    Page 1 of 1

# Exhibit 5

## **DECLARATION**

I declare under penalty of perjury under the law of California that the following is true and correct.

Annexed hereto as Exhibit A is a true and accurate copy of Arch Specialty Insurance Company policy number DPC000559102 issued to Ebenal General Contractors, Inc., 4326 Pacific Highway Bellingham, Washington 98226 in effect from April 1, 2007 to April 1, 2008 including any and all applicable endorsements and forms made a part thereof.

Executed on the 1st day of September, 2021, at Corte Madera, CA.


Sean Basco
Regional Vice President, E&S Casualty

# Exhibit A



## ☆ Arch
### Insurance Group®

## ARCH SPECIALTY INSURANCE COMPANY
(A Nebraska Corporation)

Home Office Address:
10306 Regency Parkway Drive
Omaha, NE 68113

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
Tel: (800) 817-3252

## COMMERCIAL GENERAL LIABILITY POLICY

## DECLARATIONS

Policy No.:  DPC 0005591 02                     Renewal of:  DPC 0005591 00

**Effective Date:**  04/01/07
**Expiration Date:** 04/01/08
*At 12:01 am standard time at the mailing address of the Named Insured shown below.*

**Item 1.   Named Insured and Producer**

Named Insured:           EBENAL GENERAL CONTRACTORS, INC.
Mailing Address:         4326 PACIFIC HIGHWAY
                         BELLINGHAM, WA 98226

Producer:                CRC INSURANCE SERVICES, INC.
Mailing Address:         1420 FIFTH AVENUE
                         SUITE 1610
                         SEATTLE, WA 98101

Surplus Line Producer:   JO WALKOWSKI
                         CRC INSURANCE SERVICES, INC.
Mailing Address:         1420 FIFTH AVENUE
                         SUITE 1610
                         SEATTLE, WA 98101

Surplus Lines License Number: CRCINS*98358

**Item 2.   Named Insured Classified as**

☐ Individual        ☐ Partnership    ☒ Corporation    ☐ Trust

☐ Joint Venture     ☐ LLC            ☐ LLP            ☐ Other

**Item 3.   Limits of Insurance**

Each Occurrence Limit                       $ 1,000,000

Personal and Advertising Injury Limit       $ 1,000,000   Any one person or organization

Damage to Premises Rented to You Limit  $ 100,000     Any one premises

General Aggregate Limit (Other Than          $2,000,000
Products – Completed Operations)

Products – Completed Operations            $2,000,000
Aggregate Limit

**Item 4.**  **Policy Premium: $** ▮

Deposit Premium: $ ▮            ☐ A flat charge per each policy period
                               ☒ Adjustable, per the Premium Computation
                                 Endorsement

Minimum Retained Audit Premium: $ ▮

Minimum Retained Premium:       Not subject to adjustment in the event of cancellation by
          $ ▮                   you.

**Item 5.**  **Forms & Endorsements**            See Schedule of Forms and Endorsements Form 00
          **attached:**                ML0012 00 01 03

**IN CONSIDERATION OF THE PAYMENT OF PREMIUM AND IN RELIANCE UPON STATEMENTS MADE
IN THE APPLICATION, THIS POLICY INCLUDING ALL ENDORSEMENTS ISSUED HEREIN SHALL
CONSTITUTE THE CONTRACT BETWEEN THE COMPANY AND THE NAMED INSURED.**

Arch Specialty Insurance Company is licensed in the state of Nebraska only.
Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

# SCHEDULE OF FORMS AND ENDORSEMENTS

**NAMED INSURED:** EBENAL GENERAL CONTRACTORS, INC.    TERM: 4/1/2007  to  4/1/2008
**POLICY NUMBER:** DPC 0005591 02

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 06 CGL0047 00 03 07 | COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS |
| | 00 ML0012 00 01 03 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | 00 CGL0098 00 09 06 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | 06 ML0002 00 12 06 | SIGNATURE PAGE |
| | 02 ML0003 00 08 02 | SERVICE OF SUIT |
| 1 | 00 CGL0006 00 09 06 | BLANKET ADDITIONAL INSURED ENDORSEMENT |
| 2 | 00 CGL0130 00 09 06 | OTHER INSURANCE – BROAD FORM, CGL POLICY ENDORSEMENT |
| 3 | 00 CGL0121 00 09 06 | WAIVER OF SUBROGATION ENDORSEMENT |
| 4 | 00 CGL0072 00 09 06 | NAMED INSURED ENDORSEMENT |
| 5 | 00 CGL0039 00 09 06 | ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT |
| 6 | 00 CGL0041 00 09 06 | WRAP-UP EXCLUSION ENDORSEMENT |
| 7 | 00 CGL0007 00 09 06 | CROSS SUITS EXCLUSION ENDORSEMENT |
| 8 | 00 CGL0038 00 09 06 | EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT |
| 9 | 00 CGL0080 00 09 06 | RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION ENDORSEMENT |
| 10 | 00 CGL0109 00 09 06 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT |
| 11 | 00 CGL0125 00 09 06 | SUBCONTRACTOR ENDORSEMENT (DEDUCTIBLE POLICY) |
| 12 | 00 CGL0237 00 09 06 | EXTERIOR INSULATION AND FINISH SYSTEM ABSOLUTE EXCLUSION ENDORSEMENT |
| 13 | 00 CGL0011 00 09 06 | EARTH MOVEMENT OR SUBSIDENCE EXCLUSION ENDORSEMENT |
| 14 | 00 CGL0092 00 09 06 | CHROMATED COPPER ARSENATE ("CCA") EXCLUSION ENDORSEMENT |
| 15 | 00 CGL0066 00 09 06 | RADON CONTAMINATION EXCLUSION ENDORSEMENT |
| 16 | 00 CGL0023 00 09 06 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| 17 | 00 CGL0010 00 09 06 | DESIGNATED WORK – EXCLUSION ENDORSEMENT |
| 18 | 00 CGL0119 48 09 06 | WASHINGTON STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT |
| 19 | 00 CGL0107 00 09 06 | PREMIUM COMPUTATION ENDORSEMENT – DEDUCTIBLE POLICY – VERSION I |
| 20 | 00 CGL0099 00 09 06 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| 21 | 00 CGL0220 00 09 06 | TOTAL TERRORISM EXCLUSION ENDORSEMENT |
| | | |
| | | |
| | | |

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V– DEFINITIONS.**

### SECTION I – COVERAGES

**BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for any injury or damage to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements to which this insurance applies.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the **SUPPLEMENTARY PAYMENTS** part of this policy.

    b.  This insurance applies to:

        **(1)** "Bodily injury" and "property damage" only if:

            **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            **(b)** The "bodily injury" or "property damage" occurs during the "policy period"; and

            **(c)** The "bodily injury" or "property damage" commences after the Effective Date of this policy. "Bodily injury" or "property damage" which is a continuation of or arises out of, relates to or results from, in whole or in part, injury or damage that commences before the Effective Date of this policy does not commence after the Effective Date of this policy.

        **(2)** "Personal and advertising injury" only if:

            **(a)** The "personal and advertising injury" is caused by an offense arising out of your business and committed in the "coverage territory";

            **(b)** The offense is committed during the "policy period"; and

    **(c)**    The "personal and advertising injury" commences after the Effective Date of this policy. "Personal and advertising injury" which is a continuation of or arises out of, relates to or results from, in whole or in part, injury that commences before the Effective Date of this policy does not commence after the Effective Date of this policy.

**c.**    If any "occurrence" or offense covered under this policy is also covered in whole or in part under any other commercial general liability policy issued to you by us (or by any of our related or affiliated companies) including but not limited to prior policies issued to you by us, (or by any of our related or affiliated companies), the most that will be paid under all such policies covering the "occurrence" or offense is the single highest applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us (or by any of our related or affiliated companies) as insurance that applies in excess of this insurance.

## 2.    Exclusions

The exclusions contained herein and any exclusions contained in endorsements to this policy apply regardless of whether any cause, event, material or product contributed concurrently or in any sequence to the injury or damage.

This insurance does not apply to any claim, "suit", demand or loss that alleges:

### a.    Expected Or Intended Injury

"Bodily injury" or "property damage" that in any way, in whole or in part, arises out of, relates to or results from injury or damage expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a third party are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

    **(b)**    Such party is not an insured (other than an additional insured added by endorsement to this policy); and

    **(c)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c.    Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)**    Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.   Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law(s).

**e.   Employer's Liability**

"Bodily injury" that in any way, in whole or in part, arises out of, relates to or results from injury to:

**(1)** An "employee" or "temporary worker" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.   Pollution**

**(1)** Any "bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any person or entity for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(f)** To the extent that any such "bodily injury" or "property damage" is included in the "products-completed operations hazard".

**(2)** Any loss, cost or expense that in any way, in whole or in part, arises out of, relates to or results from any:

**(a)** Request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, that any insured or others investigate, test for, monitor, clean up, remove, dispose of, contain, treat, abate, remediate, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of investigating, testing for, monitoring, cleaning up, removing, disposing of, containing, treating, abating, remediating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.   Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" that in any way, in whole or in part, arises out of, relates to or results from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" or offense which caused the injury or damage involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)**   A watercraft while ashore on premises you own or rent;

**(2)**   A watercraft you do not own that is:

   **(a)**   Less than 26 feet long; and

   **(b)**   Not being used to carry persons or property for a charge;

**(3)**   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)**   "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.   Mobile Equipment**

"Bodily injury" or "property damage" that in any way, in whole or in part, arises out of, relates to or results from:

**(1)**   The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)**   The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from:

**(1)**   War, including undeclared or civil war; or

**(2)**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.   Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of "your product" or any part of "your product".

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of "your work" or any part of "your work" and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusions **j.** through **m.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III – LIMITS OF INSURANCE**.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work"; or

**(3)**    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.    Asbestos**

"Bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the "asbestos hazard".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of asbestos, as well as any costs, fees, expenses, penalties, judgments, fines or sanctions arising from or relating thereto.

As used in this exclusion, "asbestos hazard" means:

**(1)**    the actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of, absorption of, existence of, or presence of, asbestos in any manner or form whatsoever, either directly or indirectly;

**(2)**    the actual or alleged failure to warn, advise or instruct related to asbestos in any manner or form whatsoever;

**(3)**    the actual or alleged failure to prevent exposure to asbestos in any manner or form whatsoever;

**(4)**    the actual or alleged presence of asbestos in any manner or form whatsoever, in any place whatsoever, whether or not within a building or structure, including its contents.

As used in this exclusion, "asbestos" means any substance, regardless of its form or state, containing asbestos.

**p.    Nuclear Liability**

Any injury or damage:

**(1)**    with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)**   resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

**(3)**   under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization; or

**(4)**   under any Liability Coverage, to any injury or damage resulting from "hazardous properties" of "nuclear material", if:

**(a)**   The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

**(b)**   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(c)**   The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

**(1)**   "Hazardous properties" includes radioactive, toxic or explosive properties.

**(2)**   Nuclear material" means "source material", "Special nuclear material" or "by-product material".

**(3)**   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**(4)**   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

**(5)**   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**(6)**   "Nuclear facility" means:

**(a)**   Any "nuclear reactor";

**(b)**   Any equipment or device designed or used for **(i)** separating the isotopes of uranium or plutonium, **(ii)** processing or utilizing "spent fuel", or **(iii)** handling, processing or packaging "waste";

**(c)**   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of

or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**(7)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**(8)** "Property damage" includes all forms of radioactive contamination of property.

**q. Employment Related Practices**

Any injury or damage to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions such as hiring, promotion, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

    **(d)** Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, **(c)** or **(d)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer, prospective employer, or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r. Prior Loss**

Any "bodily injury", "property damage" or "personal and advertising injury", if such injury or damage is a continuation of, or arises out of injury or damage that commenced prior to the Effective Date of the policy.

**s. Fungi or Bacteria**

"Bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the "fungi or bacteria hazard".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi or bacteria", as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.

This exclusion does not apply to any "fungi or bacteria" that are, are on, or are contained in food or beverages.

This exclusion applies regardless of whether any cause, event, material or product contributed concurrently or in any sequence to any such injury or damage.

As used in this exclusion, "fungi or bacteria hazard" means:

**(1)**  actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of, absorption of, existence of, or presence of, "fungi or bacteria" in any manner or form whatsoever, either directly or indirectly;

**(2)**  the actual or alleged failure to warn , advise or instruct related to "fungi or bacteria" in any manner or form whatsoever;

**(3)**  the actual or alleged failure to prevent exposure to "fungi or bacteria" in any manner or form whatsoever; or

**(4)**  the actual or alleged presence of "fungi or bacteria" in any manner or form whatsoever, in any place whatsoever, whether or not within a building or structure, including its contents.

As used in this exclusion, "fungi or bacteria" include, without limitation, mold, mildew, yeast, spores, mycotoxins, endotoxins, or other pathogens, as well as any particulates or byproducts of any of the foregoing, either directly or indirectly.

**t.    Lead**

"Bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to, or results from the "lead hazard".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, lead, as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.

As used in this exclusion, "lead hazard" means:

**(1)**  the actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of, absorption of, existence of, or presence of, lead in any manner or form whatsoever, either directly or indirectly;

**(2)**  the actual or alleged failure to warn, advise or instruct related to lead in any manner or form whatsoever;

**(3)**  the actual or alleged failure to prevent exposure to lead in any manner or form whatsoever; or

**(4)**  the actual or alleged presence of lead in any manner or form whatsoever, in any place whatsoever, whether or not within a building or structure, including its contents.

**u.    Intellectual Property**

"Bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of the following rights or laws:

    **(1)**    copyright, other than infringement in your "advertisement" of copyright or slogan;

    **(2)**    patent;

    **(3)**    trade secrets;

    **(4)**    trade dress; or

    **(5)**    trademark, service mark, certification mark, collective mark or trade name, other than trademarked or service marked titles or slogans.

**v.**    **Various Personal and Advertising Injury Offenses**

"Personal and advertising injury":

    **(1)**    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    **(2)**    That in any way, in whole or in part, arises out of, relates to or results from oral or written publication of material or any television, radio or other electronic publication or broadcast of any kind whatsoever (including but not limited to publication by means of Internet, extranet, e-mail or website), if done by or at the direction of the insured with knowledge of its falsity;

    **(3)**    That in any way, in whole or in part, arises out of, relates to or results from oral or written publication of material or any television, radio or other electronic publication or broadcast of any kind whatsoever (including but not limited to publication by means of Internet, extranet, e-mail or website) whose first publication or broadcast took place before the beginning of the "policy period";

    **(4)**    That in any way, in whole or in part, arises out of, relates to or results from a criminal act committed by or at the direction of the insured;

    **(5)**    For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

    **(6)**    That in any way, in whole or in part, arises out of, relates to or results from a breach of contract;

    **(7)**    That in any way, in whole or in part, arises out of, relates to or results from the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

    **(8)**    That in any way, in whole or in part, arises out of, relates to or results from the wrong description of the price of goods, products or services stated in your "advertisement";

    **(9)**    Committed, in whole or in part, by an insured whose business is:

        **(a)**    Advertising, broadcasting, publishing or telecasting;

        **(b)**    Designing or determining content of web-sites for others; or

        **(c)**    An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **15. a., b.** and **c.** of "personal and advertising injury" under **SECTION V – DEFINITIONS.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(10)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control;

**(11)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**w.    Silica**

"Bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from:

**(1)** the actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of or absorption of, "silica", either directly or indirectly;

**(2)** the actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of, absorption of, existence of or presence of, "silica dust" either directly or indirectly;

**(3)** the actual or alleged failure to warn, advise or instruct related to "silica" in any manner or form whatsoever;

**(4)** the actual or alleged failure to prevent exposure to "silica".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any other claim, "suit", demand, loss, cost or expense arising out of, relating to or resulting from the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "silica", as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising or resulting therefrom or relating thereto.

As used in this exclusion:

**(1)** "Silica" means any substance containing silicon dioxide ($SiO_2$), including, but not limited to, crystalline or non-crystalline silica, silica particles, silica compounds, "silica dust" or synthetic silica, including but not limited to precipitated silica, silica gel, fumed silica or silica flour.

**(2)** "Silica dust" means dust containing "silica" alone or mixed with any other dust or fiber(s).

**x.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

## SUPPLEMENTARY PAYMENTS

**1.**    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.**    All expenses we incur.

**b.**    Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.**    The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    **d.**    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    **e.**    All costs taxed against the insured in the "suit".

    **f.**    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    **g.**    All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    These payments will not reduce the limits of insurance.

**2.**    If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    **a.**    The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    **b.**    This insurance applies to such liability assumed by the insured;

    **c.**    The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same "insured contract";

    **d.**    The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    **e.**    The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    **f.**    The indemnitee:

        **(1)**    Agrees in writing to:

            **(a)**    Cooperate with us in the investigation, settlement or defense of the "suit";

            **(b)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            **(c)**    Notify any other insurer whose coverage is available to the indemnitee; and

            **(d)**    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        **(2)**    Provides us with written authorization to:

            **(a)**    Obtain records and other information related to the "suit"; and

             **(b)**    Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of the indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as **SUPPLEMENTARY PAYMENTS**. Notwithstanding the provisions of Paragraph **2. b. (2)** of **SECTION I – COVERAGES**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend the insured's indemnitee and to pay for attorney fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers in the conduct of your business.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors in the conduct of your business. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees in the conduct of your business.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties directly related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties directly related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties directly related to the conduct of your business, or to your other "volunteer workers" while performing duties directly related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other insurance available to that organization. However, coverage under this provision:

**a.** Is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

**b.** Does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

Further:

**(1)** Any newly acquired or formed organization that is not reported to us within the time period described in subparagraph **3. a.** above is not an insured under this policy; and

**(2)** Following the end of the 90th day described in subparagraph **3. a.** above with respect to such newly acquired or formed organization, we reserve the right to exclude coverage, or to charge additional premium, or to amend the terms and conditions of coverage.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Damages for "bodily injury" or "property damage", except such damages included in the "products-completed operations hazard"; and

**b.** Damages for "personal and advertising injury".

3.   The Products-Completed Operations Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.   Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.   Subject to Paragraphs **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all damages because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.   Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance apply to the "policy period" set forth in the Declarations or any endorsements thereto.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1.   **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2.   **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or an offense is not notice of a claim.

b.   If a claim is made or "suit" is brought against any insured, you must:

(1)   Immediately record the specifics of the claim or "suit" and the date received; and

(2)   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.** **Legal Action Against Us**

No person or organization has a right under this policy:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.** **Other Insurance**

This insurance is excess over any other valid and collectible insurance that applies to any claim or "suit' to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance. However, this condition does not apply to Commercial General Liability insurance policies issued to you by us as described in subparagraph **c.** of the **Insuring Agreement** (Part **1** of **SECTION I - COVERAGES**).

**5.** **Premium Audit**

  **a.** We will compute all premiums for this policy in accordance with our rules and rates.

  **b.** The premium shown in this policy as the Deposit Premium is an advance premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the Deposit and any audit premiums paid for the "policy period" is greater than the earned premium, we will return the excess to the first Named Insured. However, such return is subject to the Minimum Retained Audit Premium shown in **Item 4.** of the Declarations.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.** **Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.** **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Cancellation**

    **a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **d.** Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

    **e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata, and any refund will be subject to the Minimum Retained Premium shown in the Declarations. The cancellation will be effective even if we have not made or offered a refund.

    **f.** If this policy is cancelled and the Policy Premium is adjustable, the Minimum Retained Audit Premium shown in **Item 4** of the Declarations will be pro-rated commensurate with the resulting coverage period, and that pro-rated amount will be the new Minimum Retained Audit Premium. Notwithstanding the premium calculation determined by a premium audit, or by premium additions or returns during the "policy period", the amount of the Deposit Premium that we retain shall be no less than the pro-rated Minimum Retained Audit Premium. In the event that the first Named Insured cancels the policy, the amount that we retain shall be no less than the pro-rated Minimum Retained Audit Premium, or the Minimum Retained Premium shown in **Item 4** of the Declarations, whichever is greater.

    **g.** If the policy is subject to audit, a premium audit will be conducted to determine the amount of return premium due (subject to the minimum premiums described above). If the policy is cancelled by the first Named Insured, and the insured does not allow us to conduct the premium audit or fails to cooperate with us in its completion, then no premium will be returned.

    **h.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Changes**

This policy contains all agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**11. Inspection**

We shall be permitted, but not obligated, to inspect, sample and monitor on a continuing basis the insured's property or operations at any time. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the insured or others, to determine or warrant that property or operations are safe or healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

**12. Named Insureds**

   **a.** The first Named Insured shown in the Declarations is authorized to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

   **b.** Each Named Insured is jointly and severally liable for:

      **(1)** All premiums due under this policy;

      **(2)** All obligations that arise due to any deductibles applicable under this policy; and

      **(3)** Any other financial obligations of the Named Insured to us arising out of any agreements contained in this policy.

**13.  Transfer of Your Rights and Duties under this policy**

Your rights and duties under this policy may not be transferred without our written consent, except in the case of death to an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, published or distributed to market segments or to the general public, about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment;

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

    **(3)**   "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.**    "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**6.**    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**7.**    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**8.**    "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**9.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

**10.**    "Insured contract" means:

    **a.**    A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**    A written sidetrack agreement;

    **c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.**    A written elevator maintenance agreement;

    **f.**    That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any written contract or written agreement.

    Paragraph **f.** does not include that part of any written contract or written agreement:

    **(1)**    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)**   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above or supervisory, inspection, architectural or engineering activities.

**11.**  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.**  "Loading or unloading" means the handling of property:

    **a.**   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.**   While it is in or on an aircraft, watercraft or "auto"; or

    **c.**   While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.**  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.**   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.**   Vehicles maintained for use solely on or next to premises you own or rent;

    **c.**   Vehicles that travel on crawler treads;

    **d.**   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)**   Power cranes, shovels, loaders, diggers or drills; or

        **(2)**   Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.**   Vehicles not described in Paragraphs **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)**   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)**   Cherry pickers and similar devices used to raise or lower workers;

    **f.**   Vehicles not described in Paragraphs **a.**, **b.**, **c.** or **d.**. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following enumerated offenses (referred to throughout this policy as offense):

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright or slogan in your "advertisement".

All "personal and advertising injury" arising out of the same or similar material, regardless of the mode in which such material is communicated, including but not limited to publication by means of Internet, extra-net, email or website, will be considered as arising solely out of one offense.

**16.** "Policy period" means the period of time from the Effective Date shown in the Declarations to the earlier of the Expiration Date shown in the Declarations or if cancelled, the effective date of cancellation.

**17.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

**18.** "Products-completed operations hazard":

  **a.** Means all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**19.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**20.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**21.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**22.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**23.** "Your product":

**a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)**   Others trading under your name; or

      **(c)**   A person or organization whose business or assets you have acquired; and

   **(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**   Includes

   **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)**   The providing of or failure to provide warnings or instructions.

**c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**24.**   "Your work":

**a.**   Means:

   **(1)**   Work or operations performed by you or on your behalf; and

   **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

**b.**   Includes:

   **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)**   The providing of or failure to provide warnings or instructions.



# Insurance Group®

Signature Page

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested.

Mark D. Lyons

President

Martin J. Nilsen

Secretary

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.   The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

02 ML0003 00 08 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BLANKET ADDITIONAL INSURED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

    **A.** In the performance of your ongoing operations or "your work"; or

    **B.** In connection with your premises owned by or rented to you.

As used in this endorsement, the words "you" and "your" refer to the Named Insured.


All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0006 00 09 06                                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER INSURANCE - BROAD FORM, CGL POLICY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following paragraph is added to Condition **4. Other Insurance**:

> Where the Named Insured is required by a written contract to provide insurance that is primary and non-contributory, and the written contract so requiring is executed by the Named Insured before any "occurrence" or offense, this insurance will be primary, but only if and to the extent required by that written contract.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 2

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0130 00 09 06                                                                                     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OF SUBROGATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

**SCHEDULE**

**Name of Person or Organization:**   Where required by written contract.

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** Condition **8. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following provision:

We waive any right of recovery we may have against the person or organization shown in the **SCHEDULE** above because of payments we make for injury or damage arising out of your operations or "your work" done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 3

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0121 00 09 06     Includes copyrighted material of Insurance Services Office, Inc.     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

**Item 1.** of the Declarations is amended to include the following entities as Named Insured(s):

EBENAL GENERAL CONTRACTORS, INC.
EBENAL GENERAL SPECIAL PROJECTS, INC.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:4

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0072 00 09 06                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENGINEERS, ARCHITECTS OR SURVEYORS
PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 5

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0039 00 09 06     Includes copyrighted material of Insurance Services Office, Inc.     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WRAP-UP EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERALLIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES**, **2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from any wrap-up, owner controlled insurance program, contractor controlled insurance program, or similar rating or consolidated program.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:6

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0041 00 09 06                                                        Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS SUITS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES, 2. Exclusions** is amended to included the following additional exclusion:

This insurance does not apply to any claim, "suit" or demand made or asserted by or on behalf of one Named Insured against another Named Insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 7

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0007 00 09 06                                                                                   Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### Schedule

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | Each Employee | $10,000 | Each Employee | $ |
| | $1,000,000 | Aggregate | | | |
| Retroactive Date: | 11/10/2003 | | | | |

If no entry appears above with respect to the Aggregate, then the Aggregate limit will be $1,000,000.

If no entry appears above with respect to the Retroactive Date, then the Retroactive Date will be the "policy period" inception date.

A. The following is added to **SECTION I - COVERAGES:**

### COVERAGE - EMPLOYEE BENEFITS LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error or omission by the insured, or of any person for whom the insured is legally liable, in the "administration" of the insureds "employee benefit program", to which this insurance applies.

   But:

   (1) The amount we will pay for damages is limited as described in Paragraph C. of this endorsement; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS.**

   b. This insurance applies to damages only if:

   (1) The negligent act, error or omission did not take place before the Retroactive date, if any, shown in the **Schedule**, nor after the end of the policy period; and

   (2) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph F. of this endorsement.

   c. A "claim" seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

A "claim" received and recorded by the insured within sixty (60) days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.  Exclusions

This insurance does not apply to:

a.  Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.  Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c.  Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d.  Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.  Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1)  Failure of any investment to perform;

(2)  Errors in providing information on past performance of investment vehicles; or

(3)  Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with any workers' compensation, unemployment compensation insurance, social security or disability benefits laws or any similar laws.

g.  ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.   Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.   Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j.   Employment-Related Practices

Damages arising out of employment-related practices to:

(1)  A person arising out of any:

(a)  Refusal to employ;

(b)  Termination of a persons employment; or

(c)  Employment-related practices, policies, acts or omissions, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(d)  Action under Title VII of the 1964 Civil Rights Act and/or any amendments thereto; or

(2)  any other person as a consequence of any injury or damage to that person at whom any of the employment-related practices described in paragraphs (a), (b), (c), or (d) above is directed.

This exclusion applies:

(1)  Whether or not the insured may be held liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of any such injury.

B.   For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **SECTION II - WHO IS AN INSURED** are deleted in their entirety and replaced by the following:

**2.** Each of the following is also an insured:

a.   Each of your "employees" who is or was authorized to administer your "employee benefit program".

b.   Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c.   Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    a.    Coverage under this provision is afforded only until ninety (90) days after you acquire or form the organization or the end of the policy period, whichever is earlier.

    b.    Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

C.  For the purposes of the coverage provided by this endorsement, **SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

    1.    Limits Of Insurance

        a.    The Limits of Insurance shown in the **Schedule** and the rules below fix the most we will pay regardless of the number of:

            (1)  Insureds;

            (2)  "Claims" made or "suits" brought;

            (3)  Persons or organizations making "claims" or bringing "suits";

            (4)  Acts, errors or omissions; or

            (5)  Benefits included in your "employee benefit program".

        b.    The Aggregate Limit is the most we will pay for all damages to which this insurance applies.

        c.    Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

            (1)  A negligent act, error or omission; or

            (2)  A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

                However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

        The limits of the coverage provided by this endorsement apply to the policy period set forth in the Declarations or any endorsements thereto.

    2.    Deductible

        a.    Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the **Schedule** as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

        b.    The deductible amount stated in the **Schedule** applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

        c.    The terms of this insurance, including those with respect to:

            (1)  Our right and duty to defend any "suits" seeking those damages; and

            (2)  Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

    d.  We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

D.  For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS** are deleted in their entirety and replaced by the following:

    **2.  Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

        a.  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

            (1) What the act, error or omission was and when it occurred; and

            (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

        b.  If a "claim" is made or "suit' is brought against any insured, you must:

            (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

            (2) Notify us as soon as practicable.

            You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

        c.  You and any other involved insured must:

            (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

            (2) Authorize us to obtain records and other information;

            (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

            (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

        d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

    **4.  Other Insurance**

      If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

        a.  Primary Insurance

            This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

        b.  Excess Insurance

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the Retroactive Date shown in the **Schedule** of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the **Schedule** of this endorsement.

c.  Method Of Sharing

Except with respect to the insurance described in item b.(1) above, if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

E.  For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a Claims-Made Coverage Form, replaces any similar Section in that Coverage Form:

EXTENDED REPORTING PERIOD

1.  You will have the right to purchase an Extended Reporting Period, as described below, if:

a.  This endorsement is canceled or not renewed; or

b.  We renew or replace this endorsement with insurance that:

(1) Has a Retroactive Date later than the date shown in the **Schedule** of this endorsement; or

(2) Does not apply to an act, error or omission on a claims-made basis.

2.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the **Schedule**. Once in effect, the Extended Reporting Period may not be canceled.

3.  An Extended Reporting Period of five (5) years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    a.   The "employee benefit programs" insured;

    b.   Previous types and amounts of insurance;

    c.   Limits of insurance available under this endorsement for future payment of damages; and

    d.   Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period. The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the **Schedule** of this endorsement under Limits of Insurance.

Paragraph D.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the **Schedule** will then continue to apply as set forth in Paragraph D.1.c.

F. For the purposes of the coverage provided by this endorsement only, the following definitions are added to the **SECTION V -DEFINITIONS**:

1. "Administration" means:

    a.   Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b.   Handling records in connection with the "employee benefit program"; or

    c.   Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim(s)" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a.   Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may

subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b.  Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c.  Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d.  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e.  Any other similar benefits designated in the **Schedule** or added thereto by endorsement.

G.  For the purposes of the coverage provided by this endorsement, Definitions **6.** and **20.** in **SECTION V – DEFINITIONS** are deleted in their entirety and replaced by the following:

**6.**  "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**20.**  "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 8

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RESIDENTIAL AND RESIDENTIAL CONVERSION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges:

**A.** "Bodily injury", "property damage", or "personal and advertising injury" that in any way arises out of, relates to or results from the development or construction, in whole or in part, of any:

   1) "Non-commercial dwelling or residence"; or

   2) Building converted at any time, in whole or in part, to a "non-commercial dwelling or residence".

**B.** "Property damage" included within the "products-completed operations hazard" to any:

   1) "Non-commercial dwelling or residence"; or

   2) Building which is converted, in whole or in part, to a "non-commercial dwelling or residence" at any time.

For purposes of this endorsement, "non-commercial dwellings or residences" include, but are not limited to, homes, condominiums, cooperatives, town homes, lofts and time-share properties. However, "non-commercial dwellings or residences" do not include:

   1) Apartment buildings wherein all of the residential units are held for rental or lease to the general public;

   2) Hotels or motels, except any units within or otherwise part of such hotels or motels that are condominiums, time-share properties or similar types of property sold to others.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 9

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0080 00 09 06                                                              Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT AND POLICY AGGREGATE LIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

**Schedule**

| |
|---|
| **Designated Construction Project(s):** |
| ANY CONSTRUCTION PROJECT AT WHICH YOU PERFORM OPERATIONS. |

**A.** Subject to paragraph F. below, for all sums which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies and which can be attributed only to ongoing operations at a single designated construction project shown in the **Schedule** above:

    **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

    **2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all such damages except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", regardless of the number of:

        **a.** Insureds;

        **b.** Claims made or "suits" brought; or

        **c.** Persons or organizations making claims or bringing "suits".

    **3.** Any payments made for such damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the **Schedule** above.

    **4.** The limits shown in the Declarations for Each Occurrence and for Damage To Premises Rented To You continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies and which cannot be attributed only to ongoing operations at a single designated construction project shown in the **Schedule** above:

    **1.** Any payments made for such damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

    **2.**    Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.**    When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit or the Designated Construction Project General Aggregate Limit.

**D.**    If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.**    The provisions of **SECTION III – LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

**F.**    Regardless of the number of projects and any other circumstance, the amount we will pay under this insurance policy shall be no more than the Policy Aggregate Limit shown below:

Policy Aggregate Limit:    **$ 5,000,000**

In the event that no dollar amount is shown next to the Policy Aggregate Limit above, the Policy Aggregate Limit is $10,000,000.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 10

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUBCONTRACTOR ENDORSEMENT
## (DEDUCTIBLE POLICY)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended to include the following additional conditions:

1. Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than $1,000,000 each "occurrence" for "bodily injury" and "property damage" and $1,000,000 per offense for "personal and advertising injury", will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2. The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage", and "personal and advertising injury" arising out of the work performed by the "subcontractor."

3. The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4. For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any of the above conditions are not satisfied, a deductible of $100,000 per "occurrence" or offense will apply to any claim or "suit" under this policy seeking damages for "bodily injury", "property damage" and "personal and advertising injury" arising out of the work performed by the "subcontractor" for the insured. (If no deductible amount is shown above, then the deductible will be deemed to be $1,000,000 per "occurrence" or offense). Provisions for the application of deductibles under this policy are set forth in the DEDUCTIBLE LIABILITY ENDORSEMENT.

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an insured and does work or performs services for or on behalf of an insured.

All other terms and conditions of this Policy remain unchanged.


Endorsement Number: 11

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXTERIOR INSULATION AND FINISH SYSTEM
## ABSOLUTE EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. Any moisture-related or dry-rot related decay, infection or infestation of a house or other building caused, in whole or in part, by the "exterior insulation and finish system".

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

a) A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials; and

b) The adhesive or mechanical fasteners used to attach the insulation board to the substrate; and

c) A reinforcing mesh that is embedded in a coating applied to the sheathing or insulation board; and

d) A finish coat.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 12

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0237 00 09 06                                                                                         Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EARTH MOVEMENT OR SUBSIDENCE EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I –COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting or any other similar movement of earth or mud, regardless of whether such movement is a naturally occurring phenomena or is man-made.


All other terms and conditions of this policy remain unchanged.

Endorsement Number: 13

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0011 00 09 06                                                                                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CHROMATED COPPER ARSENATE ("CCA") EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from any product treated with, preserved with, or containing chromated copper arsenate ("CCA").

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:14

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0092 00 09 06                                                                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RADON CONTAMINATION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I – COVERAGES**, **2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the presence, ingestion, inhalation or absorption of radon in any form.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:15

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0066 00 09 06 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

Under **SECTION I- COVERAGES, 2. Exclusions**, Exclusion **f. Pollution** is deleted in its entirety and replaced with the following exclusion:

**f. Pollution**

1)  Any "bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, from any site, premises or location.

2)  Any loss, cost, or expense that in any way, in whole or in part, arises out of, relates to or results from any:

   a)  Request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, that any insured or others investigate, test for, monitor, clean up, remove, dispose of, contain, treat, abate, remediate, detoxify, or neutralize, or in any way respond to or assess the effects of, "pollutants"; or

   b)  Claim or "suit" by or on behalf on a governmental authority for damages because of investigating, testing for, monitoring, cleaning up, removing, containing, treating, abating, remediating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:16

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**DESIGNATED WORK – EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

| Schedule |
|---|
| Description of "your work": ANY OF "YOUR WORK" RELATED TO APARTMENTS OR APARTMENT BUILDINGS. |

Under **SECTION I – COVERAGES, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury" or "property damage" included in the "products-completed operations hazard" and that arises out of, relates to or results from "your work" shown in the **Schedule** above.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:17

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0010 00 09 06      Includes copyrighted material of Insurance Services Office, Inc.      Page 1 of 1

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WASHINGTON STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Schedule**

| Limits Of Insurance | | |
|---|---|---|
| **Bodily Injury By Accident:** | $ 1,000,000 | **Each Accident** |
| **Bodily Injury By Disease:** | $ 1,000,000 | **Aggregate Limit** |
| **Bodily Injury By Disease:** | $ 1,000,000 | **Each Employee** |
| | | |
| If no entry appears with respect to any of the limits shown above, then the limit will be deemed to be $1,000,000 | | |

A. The following is added to **SECTION I – COVERAGES**:

## COVERAGE – STOP GAP – EMPLOYERS LIABILITY

### 1. Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS**.

    b.  This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

        (1) The:

          (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

          (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

          (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

(2) The:

    (a)  "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

    (b)  "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

c. The damages we will pay, where recovery is permitted by law, include damages:

    (1)  For:

        (a)  Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

        (b)  Care and loss of services; and

        (c)  Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

        provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

    (2)  Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1)   Deprived of common law defenses; or

(2)   Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1)   Knowingly employed by you in violation of any law as to age; or

(2)   Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1)   The Federal Employer's Liability Act (45 USC Section 51-60);

(2)   The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3)   The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4)   The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5)   The Defense Base Act (42 USC Sections 1651-1654);

(6)   The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

(7)   The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

(8)   Any other workers compensation, unemployment compensation or disability laws or any similar law; or

(9)   Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

B. The **SUPPLEMENTARY PAYMENTS** provisions under **SECTION I – COVERAGES** also apply to **COVERAGE – STOP GAP – EMPLOYERS LIABILITY**.

C. For the purposes of this endorsement, **SECTION II – WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. For the purposes of this endorsement, **SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

1. The Limits of Insurance shown in the **Schedule** of this endorsement and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit shown in the **Schedule** of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit shown in the **Schedule** of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the **Schedule** of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply to the policy period set forth in the Declarations or any endorsements thereto.

E. For the purposes of this endorsement, under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Condition **2. – Duties In The Event Of Occurrence, Offense, Claim Or Suit** is deleted in its entirety and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

    a.  You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

        (5) Do nothing after an injury occurs that would interfere with our right to recover from others.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, under **SECTION V – DEFINITIONS**, Definition **4.** is deleted in its entirety and replaced by the following:

    **4.** "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c.   All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

    provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G.  **SECTION V – DEFINITIONS** is amended to include the following additional definitions:

    1.  "Workers compensation law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

    2.  "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

    3.  "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H.  For the purposes of this endorsement, the definition of "bodily injury" under **SECTION V – DEFINITIONS** does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 18

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PREMIUM COMPUTATION ENDORSEMENT-
## DEDUCTIBLE POLICY – VERSION I

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.  The Deposit Premium set forth in **Item 4** of the Declarations is adjustable, and is only an estimated premium for the Audit Period shown below.

    The final earned premium for the Audit Period shall be determined as specified in Condition **5 Premium Audit** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**. The Audit Premium shall be computed by applying the Rate of $▮▮▮▮▮▮▮▮▮ per each $▮▮▮▮▮ of the Premium Base identified in **2.** below.  Such Rate is net of any taxes, licenses, or fees. However, the final premium calculation for the policy period shall be no less than the Minimum Retained Audit Premium as stated in **Item 4** the Declarations.

    Unless otherwise specified in this Policy, the Audit Period will be the same as the policy period; or if this policy is cancelled, the Audit Period will be from the Effective Date of the policy to the effective date of cancellation.

2.  The Premium Base shall be identified in (A) and (B) below:

    (A)   Premium Base

    ☒   Gross sales excluding aircraft products.

    　　☒   intracompany sales (e.g. subsidiary-to-subsidiary, partner-to-partner, etc.) and

    　　☒   foreign sales.

    ☐   Payroll as determined immediately below:

    　　☐   Gross Unmodified Payroll

    　　☐   Workers Compensation Payroll

    　　☐   Workers Compensation Payroll excluding:

    　　　　(1)   Clerical Office Employees

    　　　　(2)   Salesmen, Collectors, Messengers

    　　　　(3)   Drivers and their helpers if principal duties are to work on or in connection with "autos"

    ☐   Other (Describe)   _____

    　　Estimated Exposures   $▮▮▮▮▮▮▮▮ _____

    (B)   Specific Deletions From Premium Base, If Any:

    ☐   Designated Products: _____

☐   Designated Operations: _____

☐   Other: _____

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 19

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

**DEDUCTIBLE LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| Schedule |
|---|
| 1.  Specific coverages to which a deductible(s) applies and amount of deductible(s): |

<table>
<tr><td></td><td><u>Coverage</u></td><td><u>Amount of Deductible</u></td></tr>
<tr><td>☒</td><td>All coverages.................................................</td><td>$ <u>10,000</u></td></tr>
<tr><td>☐</td><td>Products/Completed Operations..........................</td><td>$ _____</td></tr>
<tr><td>☐</td><td>All coverages other than Products/Completed Operations</td><td>$ _____</td></tr>
</table>

2.  The deductible applies to:

☒  Damages and Supplementary Payments
☐  Damages Only

3.  A Deductible Aggregate applies as follows:

☐  The deductible(s) shown in item 1 of this **Schedule** is subject to a Deductible Aggregate amount of $ _____.  The Deductible Aggregate is subject to adjustment upwards based on a rate of $ _____ per _____.  Such adjustment will be made on a pro-rata basis in the proportion that the final exposure base for the policy period bears to the estimated exposure base as of the Effective Date of this policy, which is $ _____. Subject to the foregoing, once the loss payments actually paid by us, and reimbursed by you to us, equals the Deductible Aggregate amount, your deductible(s) (shown in item 1. above) will be reduced to $ _____.

(If no Deductible Aggregate is shown, then there is no aggregate on the cumulative amount of deductible payments for which the insured is responsible.)

Application of the Deductible Liability Endorsement

The deductible(s) set forth in the **Schedule** apply to damages and Supplementary Payments, (or damages only if the appropriate box is checked in the **Schedule**), on a per-"occurrence" or per-offense basis.  The insured is responsible for payment of the deductible(s).

The insured is responsible for all payments within the deductible amount. Subject to the Limits of Insurance and all other terms and conditions for this policy, our obligation to pay damages and expenses on your behalf applies only to the amount of damages and expenses in excess of the deductible amounts set forth in the **Schedule**.  We may pay part or the entire deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

The Limits of Insurance are not increased by the presence of a deductible.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 20

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## TOTAL TERRORISM EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under this policy.

**A.** The following definitions are added and apply under this endorsement whenever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

  **1.** "Terrorism" means activities against persons, organizations or property of any nature:

     **a.** That involve the following or preparation for the following:

        **(1)** use or threat of force or violence; or

        **(2)** commission or threat of a dangerous act; or

        **(3)** commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

     **b.** When:

        **(1)** the effect is to intimidate or coerce a government or a civilian population or any segment thereof, or to disrupt any segment of the economy; and/or

        **(2)** it appears that the intent is to intimidate or coerce a government or a civilian population, or to further a philosophical, political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophical, political, ideological, religious, social or economic objective.

  **2.** "Any injury or damage" means any injury or damage covered under this policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in this policy.

**B.** The following exclusion is added:

### EXCLUSION OF TERRORISM

This insurance does not apply to any claim, "suit", demand, or loss that alleges "any injury or damage" that, in any way, in whole or in part, arises out of, relates to or results from "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism".  "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion also applies when one or more of the following are attributed to an incident of "terrorism":

  **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

  **2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

  **3.** The "terrorism" involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction, nuclear radiation or radioactive contamination; or

4. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 21

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured:

Endorsement Effective Date:

00 CGL0220 00 09 06                                                                                    Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY SELF-INSURED RETENTION COVERAGE FORM

The Policy is cancelled as follows:

1)  In accordance with the provisions of this policy, and (if cancelled by us) the notice that was mailed to you, this policy is cancelled effective 08/27/07.

2)  Return premium:

☐ Is subject to short-rate calculation.

☒ Is subject to pro-rata calculation.

☐ Is subject to a minimum premium.

☐ Is not applicable.

3)  Return premium amount (if applicable) will be:

▮▮▮▮▮

OR

☐ Determined following a premium audit.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 22

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: DPC 0005591 02

Named Insured: Ebenal General Contractors, Inc.

Endorsement Effective Date: 08/27/07

00 CGL0204 00 09 06                                                                          Page 1 of 1

**Exhibit 6**

SCANNED
22

FILED
COUNTY CLERK

2018 SEP 21  PM 1:46

WHATCOM COUNTY
WASHINGTON

BY _____

1
18-2-01808-37
CMP                    6
Complaint
3903297

3

4

5

6

7            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

8                  IN AND FOR THE COUNTY OF WHATCOM

9    TERRA FIRMA BELLINGHAM, LLC, a
     Washington limited liability company,            No. 18  2  01808  37
10
                                                      COMPLAINT FOR DAMAGES
11                              Plaintiff,

12          v.

13   DAVID EBENAL, ROCKPORT HOLDINGS,
     LLC, a Washington limited liability company,
14   RONALD JEPSON, and RONALD T. JEPSON &
     ASSOCIATES, P.S., a Washington professional
15   service corporation,

16                              Defendants.

17

18          Plaintiff Terra Firma Bellingham, LLC, ("**TFB**") complains and alleges as follows:

19
                            I.      **INTRODUCTION**
20
            1.1     In June 2016, David Ebenal ("**Ebenal**") and TFB member Robert Mills signed
21
     a Purchase and Sale Agreement transferring a certain parcel of real property in Whatcom
22
     County to Mr. Mills (for subsequent assignment to TFB).
23
            1.2     Located at 4264 Pacific Highway in the City of Bellingham, "**the Property**" (or
24
     "**the site**") was owned by Rockport Holdings, LLC ("**Rockport**"), an entity controlled by
25
     Ebenal.
26

COMPLAINT FOR DAMAGES - 1

**OLES MORRISON RINKER & BAKER** LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000064

1.3     On Ebenal's advice and recommendation, TFB subsequently hired the engineering firm of Ronald T. Jepson & Associates, P.S. and its principal, Ronald Jepson ("**Jepson**") for professional services in connection with rezoning and permitting for the site.

1.4     Both Jepson and Ebenal were specifically aware that TFB intended to construct greenhouses on the parcel to cultivate marijuana under a Washington state grower's license.

1.5     The causes of action at issue in this dispute arise from Ebenal's wrongful behavior in connection with this transaction, primarily through breaches of contract and misrepresentations concerning the Property, and Jepson's violation of his professional obligations.

## II.     PARTIES

2.1     Plaintiff TFB is a Washington limited liability company in good standing with its principal place of business in Whatcom County, Washington.    TFB has satisfied all prerequisites to maintain this action.

2.2     David Ebenal has represented that he is the controlling Member of Rockport Holdings, LLC, and is personally domiciled in Whatcom County, Washington.

2.3     Rockport Holdings, LLC is a Washington limited liability company doing business in Whatcom County, Washington.

2.4     Ronald Jepson is a professional engineer domiciled in Whatcom County, Washington.

2.5     Ronald T. Jepson & Associates, P.S., is a Washington professional service corporation doing business in Whatcom County, Washington.

## III.     JURISDICTION AND VENUE

3.1     All prior paragraphs are re-alleged as though fully set forth herein.

3.2     This Court has subject matter jurisdiction pursuant to RCW 2.08.010.

COMPLAINT FOR DAMAGES - 2

**OLES MORRISON RINKER & BAKER** LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000065

3.3     Venue in Whatcom County is proper pursuant to RCW 4.12 et seq. as this action concerns claims and contractual relationships related to a parcel of real property located in Whatcom County, Washington.

## IV.     FACTUAL ALLEGATIONS

4.1     All prior paragraphs are re-alleged as though fully set forth herein.

### Purchase of The Property

4.2     In May 2016, TFB retained a Seattle attorney named David Otto for the purpose of assisting TFB with the purchase of a large commercial site in the Bellingham area suitable for industrial-scale marijuana cultivation.

4.3     That same month, Ebenal began communicating with Mr. Otto about the possibility of selling property which he owned in the name of a wholly-owned entity (Rockport) for development as a marijuana grow operation.  The property had been used by Ebenal as a controlled fill site for several years.

4.4     On May 5, 2016, Ebenal sent Mr. Otto an email in which he made representations calculated to persuade Mr. Otto to facilitate a sale of the Property to buyers interested in marijuana cultivation.  Ebenal stated, "We are in the process of getting the entire site Light Industrially zoned.  The City is supporting it.  I will make you a heck of a deal.  This is a slam dunk for 502 [marijuana cultivation].  I have all the wetlands....a lot of things done on the property!"

4.5     Mr. Otto subsequently arranged a meeting, and on May 22 2016, Mr. Otto and Mr. Mills traveled to view the Property with Ebenal.

4.6     While the Property is 19.22 acres, Ebenal disclosed that only the western half (9.61 acres) was currently zoned "multi-industrial," as would be required to construct the large greenhouses TFB envisioned.  The balance was zoned multi-residential.  However, Ebenal

COMPLAINT FOR DAMAGES - 3

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000066

emphasized that nothing about the eastern half of the property (also 9.61 acres) would prevent the city from rezoning it from multi-residential to multi-industrial.

4.7    Ebenal emphasized that TFB could double the buildable, industrial area through rezoning, and that by doing so the property value would increase by almost $1 million dollars to approximately $2,900,000.

4.8    Ebenal represented that the only other impediments to the development of the entire site was that the developer would need to construct a new bridge and driveway onto the Property (the Property can only be accessed via a wet area on the western side).  Ebenal claimed this could be accomplished by updating a wetlands permit with the City of Bellingham, meaning construction on a new bridge could begin before the City reviewed the entire planned development project.

4.9    At Ebenal's invitation, this initial meeting was also attended by Jepson, whom Ebenal introduced as someone extremely knowledgeable about the Property.

4.10    Jepson is a professional engineer who, on information and belief, has performed engineering services for Ebenal on the subject property and who owns real property under development adjoining or near the Property.

4.11    During the meeting, Jepson showed Mr. Mills drawings and maps of the Property that Jepson had previously produced.  Jepson used these documents to identify and describe various features of the Property, including its dimensions and an area of wetlands.

4.12    Jepson demonstrated to Mr. Mills that these wetlands occupied only a small area on the eastern edge of the property.

4.13    Following the meeting, Ebenal sent Mr. Otto a follow-up email on May 18, 2016 with the subject line "30,OOO [sic] Building Pacific Highway Site", in which Ebenal asserted "My engineer drew this sketch.  We can build several buildings in [sic] the site."

COMPLAINT FOR DAMAGES - 4

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000067

4.14    Mr. Otto arranged and attended a second meeting at the property on June 18, 2016, this time with the full contingent of TFB partners in attendance (Gary Primm, Matthew Primm, Carol Primm and Robert Mills).

4.15    At this second meeting, Ebenal and Jepson repeated and reemphasized their prior representations about the property.

4.16    These included representations by Ebenal that he had completed almost all wetland remediation work that would be required prior to development, and that the Property could physically support at least 30,000 square feet of greenhouse space that would serve TFB's needs.

4.17    Ebenal also provided TFB with a binder containing additional information about the property, including a cover page which states, "The property can support a 30,000 square foot warehouse, in addition to additional buildings."

4.18    Largely on the basis of these representations, TFB elected to purchase the Property.

4.19    On June 7, 2016, Robert Mills (and/or assigns) and David Ebenal (for Rockport Holdings, LLC) signed a Vacant Land Purchase and Sale Agreement ("**Purchase Agreement**") for the Property.

4.20    The purchase price was $1,600,000.00, transferred in cash at closing on July 15, 2016.

4.21    An addendum to the Purchase Agreement included a special arrangement providing for the construction of a new bridge onto the property.  Ebenal suggested during negotiations that a new bridge would cost $200,000 to construct.  The parties split the cost of the new bridge, with each party contributing $100,000 of the necessary funds.  Ebenal's $100,000 were deducted from the sale price of $1.6 million.  The funds were to be deposited into Mr. Otto's trust account and distributed by Mr. Otto as construction progressed.

COMPLAINT FOR DAMAGES - 5

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000068

4.22    The Addendum also specified:

4.22.1  That Rockport would have the "last right of refusal" to perform "any and all construction work on the property;"

4.22.2  That Rockport would be employed for "permit consulting," meaning that "Rockport shall recommend a team of consultants (architects, engineers, surveyors, etc....) [sic] and shall work with the team in order to obtain a building permit for an approximately 40,000 square foot concrete tilt up building;"

4.22.3  That "Seller shall remove all concrete and other 'scrap' from the Property provided such concrete and other 'scrap' cannot otherwise be used for roadways on the property;" and that

4.22.4  "Buyer's obligation to purchase the Property is contingent upon Buyer securing a Washington State Liquor and Cannabis Board [WSLCB] approved 'Tier 3' Producer and Processor license."

4.23    Ebenal exercised Rockport's "right of last refusal" and elected to perform the construction of the new bridge.

**Bridge Construction and Debris Issues**

4.24    Soon after closing, Ebenal and his employees began clearing the property and installing temporary mobile structures, water lines, and power hookups in order to prepare the Property for inspection by the WSLCB (as required for the Tier 3 license).

4.25    The bills for this work came from Summit Construction, Inc. (another of Ebenal's business entities) rather than Rockport.

4.26    The Property was inspected and approved for a Tier 3 license on approximately September 23, 2016, but Ebenal had not secured the appropriate permits from the City of Bellingham before performing the preparatory work on the site.

COMPLAINT FOR DAMAGES - 6

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000069

4.27    Despite Ebenal's contractual obligation to work with TFB to obtain the required building permits, his misfeasance caused the City to "red tag" the project, delaying future construction.

4.28    In December 2016, Ebenal contracted with a firm called Concrete Technology Corporation in Tacoma, Washington to build the bridge girders for the replacement bridge that Ebenal had elected to build.

4.29    However, contrary to Ebenal's earlier representations, the City of Bellingham refused to issue a permit for replacement of the bridge, and elected to withhold such permission until the entire site redevelopment plan was approved.  As TFB was later to learn, Ebenal's relationship with the City's permitting officials was strained because of his extensive history of City code violations and dishonest conduct.

4.30    Ebenal ordered the girders, clearly evidencing his election to build the bridge.

4.31    However, the order was placed so far in advance of potential permit approval that TFB was required to pay off-site storage costs for the girders from April 2017 through March 2018, after a permit for bridge replacement was granted and the girders could finally be moved to the Property.

4.32    In the meantime, Ebenal had begun to distance himself from his remaining obligations to TFB.

4.33    On July 19, 2017 Mr. Mills sent a text message to Ebenal asking when Ebenal planned to clear the property of concrete "scrap" and other construction debris, as required by the Purchase Agreement Addendum.

4.34    In that communication, Mr. Mills also asked if Ebenal had been in contact with the City planning office concerning Ebenal's previously expressed preference for grinding up the concrete debris and using it as roadbed on the property.  Informal communications from the planning office had indicated to Mr. Mills that such practices were prohibited.

COMPLAINT FOR DAMAGES - 7

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000070

4.35   Ebenal simply responded that no one from the City had returned his call.

4.36   Mr. Mills sent additional messages that day, requesting clarification as to when Ebenal would perform the remaining work on the site.

4.37   Ebenal didn't respond until July 25, 2017, when he sent a text message stating that he "can't talk right now" but indicating that he would call shortly. Ebenal did not call on July 25, and instead neglected to return additional calls and text messages for several days.

4.38   TFB then directed Mr. Otto to send a Notice of Claim letter to Ebenal concerning the outstanding work. The letter was sent on August 3, 2017, with a response requested by August 10, 2017.

4.39   Ebenal responded to Mr. Otto by email the following day (August 4, 2017), stating "Please do not contact me in the future regarding this case. All correspondence should go through my attorney." TFB initially had no idea who represented Ebenal, if anyone.

4.40   Ebenal also demanded that Mr. Otto withdraw from representing TFB in an adverse proceeding, on the basis that Mr. Otto had previously represented Rockport and had a conflict of interest.

4.41   On approximately August 28, 2017, Ebenal entered the Property without permission or notice and removed a set of metal plates from the old, existing bridge. While removing the plates, Ebenal damaged the bridge itself, causing it to become impassible and temporarily blocking access to the Property.

4.42   TFB was required to rent a set of metal plates and pay a third party to repair the damage to the bridge, further delaying and increasing the cost of development work.

4.43   On January 31, 2018, TFB finally received a permit from the City of Bellingham to replace the bridge.

4.44   With Ebenal having defaulted on his contractual obligation to complete the bridge replacement, TFB engaged a third party to pour footings for the new bridge and begin

COMPLAINT FOR DAMAGES - 8

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000071

construction.   The bridge construction has experienced significant cost overruns beyond Ebenal's $200,000 estimate.

**Engineering and Permitting Issues**

4.45     Soon after closing of the Purchase Agreement, Ebenal had recommended that TFB hire Jepson and his firm, Ronald T. Jepson & Associates P.S. to provide permitting and rezoning assistance.

4.46     Jepson, through his prior dealings with Ebenal, was well aware of the actual wetland footprint on the property.   However, Jepson failed to disclose that his prior representation of Ebenal created a professional conflict of interest, nor did he inform TFB of his own private business interests created circumstances that could influence his judgment.

4.47     TFB signed a services contract with Ronald T. Jepson & Associates P.S. on August 2, 2016 and paid a retainer of $5,000.00.   Jepson gave TFB a projected budget of $65,000 for all services required to get the zoning updated and construction underway.

4.48     Jepson then purportedly began working with the City of Bellingham to get the property rezoned.

4.49     The City planning commission voted 7-0 on April 20, 2017 in favor of rezoning to make the entire parcel "multi-industrial," but progress was slow thereafter.  The City Council ultimately did not fully approve the rezoning until July 24, 2017.

4.50     On May 4, 2017, Mr. Mills sent Jepson an email asking exactly how much additional, developable acreage TFB could expect after the rezoning was complete.

4.51     Jepson replied that the rezoning would result in only 1.5 acres of additional buildable land.  Jepson later explained that the remainder of the eastern half of the Property would need to be used for wetland mitigation.

COMPLAINT FOR DAMAGES - 9

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000072

4.52   This was in stark contrast to Jepson's prior representations to Mr. Mills, and was the first time Jepson had ever indicated that wetland mitigation would significantly curtail future development, regardless of rezoning.

4.53   TFB was shocked by this revelation.   Jepson had never revealed this wetland mitigation problem over the proceeding months.

4.54   Accordingly, TFB began closely examining Jepson's prior billings and correspondence.   TFB discovered that Jepson had raised his hourly rates without informing TFB.   When questioned by Mr. Mills, Jepson claimed this was a mistake and corrected the billings to the previously agreed rate.

4.55   However, the overall Jepson bill continued to climb until the total amount exceeded the estimated budget by almost 50%, approaching $94,000.

4.56   TFB finally lost patience with Jepson in mid-May 2017, when TFB discovered that Jepson had taken a three-week vacation to England during a critical stage of the rezoning and permitting process.   TFB received no advance notice of his departure, and was unable to contact Jepson except through email.

4.57   Mr. Mills visited Jepson's office on May 16, 2017 in search of additional information.   There, Mr. Mills spoke with Jepson's son, Christopher Jepson, an employee of Ronald T. Jepson & Associates P.S. whose work frequently appeared in TFB's bills from Jepson.   Christopher Jepson admitted that he was largely unfamiliar with TFB's project and suggested contacting Jepson instead.   This directly conflicted with months of Jepson's billings, which featured significant amounts purportedly for Christopher Jepson's work.

4.58   TFB began to withhold payment after this visit to Jepson's office until further clarity could be provided regarding the billings.

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000073

4.59    On June 19, 2017, Jepson sent a letter requesting $25,000.00 in claimed outstanding fees.  After reviewing the bills, TFB refused, as the expenses were for work that remained unperformed or was performed improperly.

4.60    TFB terminated its relationship with Jepson on about July 19, 2017 by sending Jepson a check (which he promptly cashed) in the amount of $15,000 for outstanding fees.

**Soil Quality Issues**

4.61    In spite of the setback caused by the required wetland mitigation, TFB still expected to build at least two greenhouses on the western half of the Property.

4.62    In approximately February of 2016, TFB had contracted with a company called Dutch Greenhouses to supply a large greenhouse structure for marijuana cultivation.

4.63    Around this time, TFB also hired an architectural firm called Harthorne Hagen Architects P.S. to assist with coordinating development of the Property.

4.64    Both Harthorne Hagen and Dutch Greenhouses suggested TFB hire an engineering firm to ensure the Property could withstand the load factor for the greenhouses.

4.65    Accordingly, in March 2017, TFB hired GeoTest Services, Inc. to perform compaction tests on the soil by digging a number of test holes.

4.66    GeoTest determined that the Property could not support the loads Ebenal had promised without installing expensive pin pilings or performing extensive remediation efforts. GeoTest then asked to disassociate with the project in order to avoid potential litigation involving Ebenal, whom TFB came to learn had an extensive history of litigation.

4.67    TFB relayed this news to Ebenal, who disputed that the ground was not competent to support the greenhouses.

4.68    Ebenal claimed that another firm, Merit Engineering, was very familiar with the Property, had observed the soil compaction process in the past, and would certify that the soils he had imported to the site were of good quality and were we compacted properly.

COMPLAINT FOR DAMAGES - 11

**OLES MORRISON RINKER & BAKER** LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234

Ebenal 000074

4.69   On April 12, 2017, TFB dutifully contracted with Merit Engineering, Inc. and Rockport to dig approximately 6-7 test holes, with a Merit Engineering representative on site to witness and certify the results.

4.70   After digging 5-6 test holes, the Merit Engineering representative stated that he wouldn't certify any compaction test, and that he didn't witness the entire Property being compacted as Ebenal had claimed.  Rather, the employee had only witnessed a small portion of the property being compacted because Ebenal had refused to pay the cost of Merit Engineering witnessing compaction for the entire site.

4.71   In an attempt to finally settle the compaction issue, on May 5, 2017, TFB hired a third engineering firm, GeoEngineers, to perform additional compaction tests and provide definitive results.

4.72   TFB hired Dirt Works Bellingham, Inc. (an excavating company) to begin grading the western half of the property in late December, with GeoEngineers performing compaction tests on site.

4.73   GeoEngineers confirmed that most of the soil in the western half of the site was uncompacted clay which could not support even a relatively light structure, such as a greenhouse.

4.74   Dirt Works then spent the majority of September through December 2017 removing these unstable soils and replacing them with proper soil that would compact properly.  TFB ultimately had to pay for the removal of approximately 16,000 yards of inferior fill soils, at significant expense.

4.75   In Early October 2017, GeoEngineers also began to smell petroleum products on the site, which it soon determined was the result of significant quantities of toxic, diesel-soaked soil.

COMPLAINT FOR DAMAGES - 12

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000075

4.76    TFB was forced to remediate by removing approximately 22 truckloads of contaminated soil.

4.77    Neither Jepson nor Ebenal had ever given any indication that there was toxic waste on the Property.  In fact, Ebenal had affirmatively stated that the site was free of potential environmental contaminants.

4.78    In approximately late September, 2017, Ebenal called Mr. Mills and complained that he had seen construction at the Property being performed by other contractors. He demanded to know why he hadn't been allowed to perform it per his "right of last refusal."

4.79    Ebenal had disregarded that TFB had repeatedly tried to contact him concerning his existing contractual obligations, and that he had sent an e-mail directing TFB to speak only to his attorney.

4.80    Through early 2018, TFB continued to seek final approval of its building permit for the greenhouses themselves.  Even after several rounds of revisions and changes, the City of Bellingham continued to demand additional concessions.  After TFB received a response from the City requiring 14 pages of additional changes to the permit application on February 2, 2018, TFB chose to suspend the project.

4.81    By way of mitigation, TFB has since put the Property up for sale, but has been unable to find buyers willing to pay a price which accounts for the significant expenses TFB has already invested.

## V.    CLAIMS FOR RELIEF

### CAUSES OF ACTION 1 AND 2
(Breach of Contract – Ebenal/Rockport)

5.1    All prior paragraphs are re-alleged as though fully set forth herein

COMPLAINT FOR DAMAGES - 13

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000076

5.2     Defendant Ebenal has failed to observe the formalities separating his LLCs from his personal affairs, and further, has attempted to use these entities to facilitate fraudulent conduct. As such, the court should "pierce the veil" provided by these LLCs and hold Ebenal personally liable for his misconduct.

5.3     Ebenal covenanted to a number of specific contractual obligations to TFB, notably including:

        5.3.1   The obligation in the Addendum to the parties' Vacant Land Purchase and Sale Agreement that the Seller remove all concrete and other "scrap" from the Property;

        5.3.2   Ebenal's obligation to build the replacement entrance bridge onto the Property after exercising his contractual "right of last refusal" to perform the work; and

        5.3.3   Ebenal's obligation in the Addendum to "work with the team in order to obtain a building permit for an approximate [sic] 40,000 square foot concrete tilt up building."

5.4     Ebenal ultimately breached every one of these contractual obligations by:

        5.4.1   Failing to remove concrete or scrap material, requiring TFB to procure replacement performance of this work from a third party at significant additional expense;

        5.4.2   Ordering bridge girders so far ahead of schedule that storage fees were required, before abandoning the replacement project altogether; and

        5.4.3   Failing to coordinate with TFB, the City of Bellingham, and other professionals during the preparations for the WSLCB inspection, the bridge construction, or indeed, anything connected to TFB's development of the Property.

OLES MORRISON RINKER & BAKER LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234

Ebenal 000077

5.5     As a result of these breaches, TFB has been damaged in an amount to be proven at trial, but not less than $215,921, plus interest, fees, and costs.

**CAUSE OF ACTION 3**
(Breach of Contract – Jepson)

5.6     All prior paragraphs are re-alleged as though fully set forth herein.

5.7     TFB signed a services contract with Ronald T. Jepson & Associates P.S. on August 2, 2016.

5.8     By virtue of this agreement, Jepson owed TFB a duty of undivided loyalty and was required by Washington law to disclose any conflicts of interest.

5.9     Jepson never cleared any potential conflict of interest presented by his past relationship with Ebenal, whom he assisted with the sale of the Property.

5.10    Jepson affirmatively misrepresented and later failed to timely disclose to TFB that, due to the wetland conditions, almost 50% of its Property would be unfit for the use TFB intended.

5.11    This conduct constitutes professional malpractice and a breach of contract to provide competent, loyal service to TFB.

5.12    As a result of this breach, TFB has been damaged in an amount to be proven at trial, plus interest, fees, and costs.

**CAUSE OF ACTION 4**
(Fraudulent Misrepresentation – Ebenal/Rockport)

5.13    All prior paragraphs are re-alleged as though fully set forth herein.

5.14    Defendant Ebenal has failed to observe the formalities separating his LLCs from his personal affairs, and further, has attempted to use these entities to facilitate fraudulent conduct.  As such, the court should "pierce the veil" provided by these LLCs and hold Ebenal personally liable for his misconduct.

COMPLAINT FOR DAMAGES - 15

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000078

5.15    Ebenal is liable for multiple fraudulent misrepresentations in connection with the sale of the Property:

        5.15.1 Ebenal repeatedly alleged that the soils on the Property were of a variety and compaction sufficient to support at least a 30,000 square foot structure;

        5.15.2 Ebenal repeatedly misrepresenting the quantity of unmitigated wetlands on the site;

        5.15.3 Ebenal repeatedly omitted any mention of toxic waste on the property, including diesel-soaked soil.

5.16    Ebenal knew these were false statements of material fact, as Ebenal:

        5.16.1  Had owned the property for years and knew what soils he had dumped (or allowed others to dump) on the site;

        5.16.2  Knew that he had not retained engineers to confirm the level of soil compaction across the entire site;

        5.16.3  Knew he had not mitigated the significant wetlands on the property;

        5.16.4  Knew that he had parked equipment on the site and otherwise allowed contamination of the ground, but never performed corresponding environmental remediation; and

        5.16.5  Most importantly, knew that these false and/or concealed facts would influence TFB's decision to buy the Property.

5.17    Ebenal also knew of TFB's ignorance of these circumstances, and yet intentionally induced TFB to rely on his assurances.

5.18    TFB reasonably relied on these misrepresentations, and has suffered damages in an amount to be proven at trial, plus interest, fees, and costs.

COMPLAINT FOR DAMAGES - 16

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000079

**CAUSE OF ACTION 5**
(Fraudulent Misrepresentation – Jepson)

5.19    Jepson is liable for fraudulent misrepresentations concerning the wetlands on the property and the potential for development of TFB's planned greenhouses after rezoning.

5.20    Jepson misrepresented the concentration and position of wetlands on the property to Mr. Mills and the TFB partners during the initial site visits in May 2016.

5.21    Jepson never corrected these misrepresentations once he was professionally engaged by TFB, instead continuing to let TFB believe significant portions of the property would be developable, without ever mentioning the looming specter of wetland remediation.

5.22    Jepson knew these were false statements of material fact, as he was already fully familiar with the Property and knew the quantity of developable land was TFB's primary concern.

5.23    Jepson knew TFB was ignorant of these facts, as he was tasked with securing rezoning for structures TFB was planning to build across *both* the western and eastern halves of the Property.

5.24    TFB did rely on Jepson's misrepresentations, and was justified in relying on statements from its own engineer.

5.25    This has resulted in damages to TFB in an amount to be proven at trial, plus interest, fees, and costs.

**CAUSES OF ACTION 6**
(Negligent Misrepresentation – Ebenal/Rockport)

5.26    All prior paragraphs are re-alleged as though fully set forth herein.

5.27    Defendant Ebenal has failed to observe the formalities separating his LLCs from his personal affairs, and further, has attempted to use these entities to facilitate fraudulent conduct. As such, the court should "pierce the veil" provided by these LLCs and hold Ebenal personally liable for his misconduct.

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000080

1

2

5.28    Ebenal is liable for multiple negligent misrepresentations in connection with the sale of the Property:

3

4

5

> 5.28.1 Ebenal repeatedly provided false information concerning whether the soils on the Property were competent and compacted/compactable sufficient to support at least a 30,000 square foot structure;

6

7

> 5.28.2 Ebenal repeatedly supplied false information concerning the quantity of unmitigated wetlands on the site;

8

9

> 5.28.3 Ebenal provided false information concerning the presence of toxic waste on the property, including diesel-soaked soil.

10

11

5.29    Ebenal knew or should have known this false information was supplied to guide TFB in its business transactions because Ebenal:

12

13

> 5.29.1 Knew or should have known that TFB would only buy the Property if the site's ground could support multiple large greenhouses;

14

15

> 5.29.2 Knew or should have known that TFB would plan to build large greenhouses across both the western and eastern half of the property;

16

17

18

> 5.29.3 Knew or should have known that TFB would not have purchased the Property, or purchased the Property only for a lower price, if it was aware of toxic waste on the site.

19

20

21

5.30    Ebenal was negligent in communicating this false information by continuing to assert these misrepresentations to TFB on multiple occasions without confirming the assertions' accuracy.

22

23

5.31    TFB reasonably relied on these misrepresentations, and the false information proximately caused damages to TFB by inducing it to purchase the Property.

24

25

5.32    TFB has suffered these damages in an amount to be proven at trial, plus interest, fees, and costs.

26

COMPLAINT FOR DAMAGES - 18

**OLES MORRISON RINKER & BAKER** LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234

Ebenal 000081

1

**CAUSES OF ACTION 7**
(Negligent Misrepresentation - Jepson)

2

5.33    All prior paragraphs are re-alleged as though fully set forth herein.

3

4

5.34    Jepson is liable for negligent misrepresentations concerning the wetlands on the property and the potential for development of TFB's planned greenhouses after rezoning.

5

6

5.35    Jepson supplied false information to TFB concerning the position and quantity of wetlands on the Property, knowing that this information would guide TFB in its business

7

transactions.

8

9

5.36    Jepson never corrected these misrepresentations once he was professionally engaged by TFB, instead continuing to let TFB believe significant portions of the property

10

would be developable, without ever mentioning the looming specter of wetland remediation.

11

12

5.37    Communicating these falsities and then failing to correct them was, at the very least, negligent.

13

14

5.38    TFB did rely on these misrepresentations, purchasing the property and paying Jepson to get it rezoned on the understanding that this would result in significant additional

15

developable acreage.

16

17

5.39    TFB's reliance on information supplied by its professional engineer was reasonable, and proximately caused damages to TFB in an amount to be proven at trial, plus

18

interest, fees, and costs.

19

20

**CAUSE OF ACTION 8**
(Consumer Protection Act – Ebenal/Rockport)

21

5.40    All prior paragraphs are re-alleged as though fully set forth herein.

22

5.41    Defendant Ebenal has failed to observe the formalities separating his LLCs

23

from his personal affairs, and further, has attempted to use these entities to facilitate

24

fraudulent conduct.  As such, the court should "pierce the veil" provided by these LLCs and

25

hold Ebenal personally liable for his misconduct.

26

COMPLAINT FOR DAMAGES - 19

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000082

5.42    Ebenal's actions (alleged above) constitute unfair and deceptive acts or practices in trade or commerce which materially affect the public interest.

5.43    These acts proximately caused injury to TFB in violation of the Consumer Protection Act, Chapter 19.86 RCW.

5.44    TFB is entitled to an award of damages against Defendants under RCW 19.86.090, including treble damages up to $25,000, together with costs and reasonable attorney fees.

### CAUSE OF ACTION 9
(Unjust Enrichment – Ebenal/Rockport)

5.45    All prior paragraphs are re-alleged as though fully set forth herein.

5.46    Defendant Ebenal has failed to observe the formalities separating his LLCs from his personal affairs, and further, has attempted to use these entities to facilitate fraudulent conduct.  As such, the court should "pierce the veil" provided by these LLCs and hold Ebenal personally liable for his misconduct.

5.47    Accordingly, TFB is entitled to recover from the Ebenal for unjust enrichment.

5.48    TFB conferred benefits on Ebenal in the form of payment for the Property and portions of the bridge construction.

5.49    Ebenal appreciated and knew these benefits to be valuable.

5.50    The circumstances are such that Ebenal's acceptance or retention of these benefits would be inequitable without repayment for their value.

5.51    Because Ebenal improperly received and retained these benefits, TFB is entitled to an award in an amount to be proven at trial, plus interest, fees, and costs.

### CAUSE OF ACTION 10
(Breach of the Implied Duty of Good Faith and Fair Dealing – Ebenal & Jepson)

5.52    All prior paragraphs are re-alleged as though fully set forth herein.

COMPLAINT FOR DAMAGES - 20

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000083

5.53    Defendant Ebenal has failed to observe the formalities separating his LLCs from his personal affairs, and further, has attempted to use these entities to facilitate fraudulent conduct. As such, the court should "pierce the veil" provided by these LLCs and hold Ebenal personally liable for his misconduct.

5.54    Ebenal failed to cooperate with TFB, the City of Bellingham, and others, thereby delaying and needlessly interfering with the development process.

5.55    By failing to perform the obligations imposed by the Purchase Agreement in good faith, Ebenal prevented TFB from obtaining the full benefit of its bargain for the purchase of the Property.

5.56    Alternatively, to the extent Jepson's misconduct and dishonesty did not rise to the level of professional malpractice, fraud, or negligent misrepresentations, it at least constituted a failure to perform the obligations imposed by his contract with TFB in good faith.

5.57    On this basis, TFB is entitled to damages in an amount to be proven at trial, plus interest, fees, and costs.

## V.    PRAYER FOR RELIEF

Plaintiff TFB prays for relief against Defendants as follows:

1.    On the above causes of action, for judgment against Defendants for damages in an amount to be proven at trial;

2.    For costs, attorney's fees, and treble damages as provided by statute, common law, or equity;

3.    For leave to amend this Complaint, if needed, to supplement or allege new causes of action based on facts that may arise in discovery; and

4.    For any and such further relief that this Court deems just and equitable.

/ / /

/ / /

COMPLAINT FOR DAMAGES - 21

OLES MORRISON RINKER & BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101-3930
PHONE: (206) 623-3427
FAX: (206) 682-6234

Ebenal 000084

1   DATED this 20th day of September, 2018.

2                                           OLES MORRISON RINKER & BAKER LLP

3

4                                    By   _____

5                                           Sam E. Baker, Jr., WSBA No. 3872
                                            Daniel P. Radthorne, WSBA No. 51438
6                                           Oles Morrison Rinker & Baker LLP
                                            701 Pike Street, Suite 1700
7                                           Seattle, WA  98101-3930
                                            Telephone:  (206) 623-3427
8                                           Facsimile:  (206) 682-6234
                                            Email:     Baker@oles.com
9                                                      Radthorne@oles.com

10                                          *Attorneys for Plaintiff Terra Firma Bellingham
                                            LLC*

11

12   4850-9912-5875, v. 1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**OLES MORRISON RINKER & BAKER** LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234

Ebenal 000085